UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEKLA BALFOUR-BROWNE, on behalf of himself and all others similarly situated,<br><br>       Plaintiffs,<br><br>  -against-<br><br>EDEN FINE ART NY INC. d/b/a EDEN GALLERY, CATHIA KLIMOVSKY, GUY MARTINOVSKY, GAL YOSEF, and CETRA ART CORPORATION,<br><br>       Defendants. | 25-cv-1142<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS EDEN FINE ART NY INC., CATHIA KLIMOVSKY, GUY MARTINOVSKY, GAL YOSEF, AND CETRA ART CORPORATION'S MOTION TO DISMISS THE COMPLAINT**

MORRISON COHEN LLP
Jason Gottlieb
Michael Mix
Emma McGrath
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Counsel for Defendants Eden Fine Art NY Inc., Cathia Klimovsky, Guy Martinovsky, Gal Yosef, and Cetra Art Corporation*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................................... 4

ARGUMENT .......................................................................................................................... 8

I.      THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT .... 8

    A.      Plaintiff Fails to Sufficiently Allege the Existence of a Contract ........................... 8

    B.      Plaintiff Fails to Sufficiently Allege Breach ......................................................... 12

    C.      Even if a Contract Exists, It is Barred by the Statute of Frauds ........................... 13

II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE
       IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ............................. 14

III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF GBL § 349 16

    A.      Plaintiff Cannot Invoke GBL § 349 Because He Did Not Enter Into a Transaction
          In New York .......................................................................................................... 16

    B.      Plaintiff Has Not Sufficiently Pleaded a Cognizable Injury ................................. 17

    C.      The Complaint Fails to Sufficiently Allege that Plaintiff Saw the Allegedly
          Deceptive Statements ............................................................................................ 18

    D.      The Complaint Fails to Plead a Deceptive Statement ........................................... 19

IV.     THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT ..... 20

    A.      The Unjust Enrichment Claim Improperly Duplicates the Other Claims ............. 20

    B.      The Complaint Fails to Sufficiently Plead that Defendants Were Enriched at
          Plaintiff's Expense ............................................................................................... 22

V.      THE LIMITATION OF LIABILITY CLAUSE IN THE TERMS OF SERVICE BARS
       THE CLAIMS AGAINST CETRA AND KLIMOVSKY ............................................. 22

VI.     THE COURT LACKS PERSONAL JURISDICTION OVER YOSEF ......................... 23

    A.      The Court Lacks General Personal Jurisdiction Over Yosef ................................. 23

    B.      The Court Lacks Specific Personal Jurisdiction Over Yosef ................................ 24

VII.    THE COURT SHOULD AWARD DEFENDANTS THEIR REASONABLE
       ATTORNEYS' FEES AND COSTS IN DEFENDING THE AAMER ACTION ........... 26

CONCLUSION ...................................................................................................................... 27

## **TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*Advanced Knowledge Tech., LLC v. Fleitas*,
   2021 U.S. Dist. LEXIS 247723 (S.D.N.Y. Dec. 28, 2021) ....................................................20

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
   529 F. Supp. 3d 111 (S.D.N.Y. 2021)........................................................................................25

*Arkansas Valley Smelton Co. v. Belden Mining Co.*,
   127 U.S. 379 (1888)....................................................................................................................11

*Atuahene v. City of Hartford*,
   10 Fed. App'x 33 (2d Cir. 2001).................................................................................................12

*Barron v. Helbiz Inc.*,
   2023 U.S. Dist. LEXIS 155324 (S.D.N.Y. Aug. 31, 2023)..............................................10, 13

*Bates v. Abbott Labs.*,
   2025 U.S. App. LEXIS 496 (2d Cir. Jan. 10, 2025) ..................................................................19

*Charter Contr. Co. v. Orange & Rockland Utils, Inc.*,
   2020 U.S. Dist. LEXIS 244706 (S.D.N.Y. Dec. 30, 2020) .......................................................15

*Cruz v. Fxdirectdealer*,
   720 F.3d 115 (2d Cir. 2013)..................................................................................................16, 17

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)....................................................................................................................23

*Edwards v. Sequoia Fund, Inc.*,
   2018 U.S. Dist. LEXIS 180993 (S.D.N.Y. Oct. 18, 2018) ........................................................11

*Edwards v. Sequoia Fund, Inc.*,
   938 F.3d 8 (2d Cir. 2019) .............................................................................................................9

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l, N.V.*,
   400 F. App'x 611 (2d Cir. 2010) ...............................................................................................21

*Fink v. Time Warner Cable*,
   810 F. Supp. 2d 633 (S.D.N.Y. 2011)........................................................................................10

*Fishton v. Peloton Interactive, Inc.*,
   2020 U.S. Dist. LEXIS 208861 (S.D.N.Y. Nov. 9, 2020) .........................................................17

*Georgia Malone & Co., Inc. v. Rieder*,
   19 N.Y.3d 511 (2012)..................................................................................................................22

*Herrick v. Grindr LLC*,
  765 Fed App'x 586 (2d Cir. 2019)..........................................................................19

*Horowitz v. 148 S. Emerson Assocs. LLC*,
  888 F.3d 13 (2d Cir. 2018)......................................................................................26

*Huang v. Valarshash LLC*,
  2023 U.S. Dist. LEXIS 167491 (S.D.N.Y. Sept. 20, 2023)...............................23, 24

*JN Contemporary Art LLC v. Phillips Auctioneers LLC*,
  29 F.4th 118 (2d Cir. 2022) ...............................................................................14, 15

*Johnson v. UBS AG*,
  791 F. App'x 240 (2d Cir. 2019) .............................................................................26

*Kamdem-Oaffo v. PepsiCo, Inc.*,
  2015 U.S. Dist. LEXIS 28497 (S.D.N.Y. Mar. 9, 2015) .........................................13

*Kaplan v. Old Mut., PLC*,
  2009 U.S. Dist. LEXIS 134174 (S.D.N.Y. July 10, 2009) ......................................14

*Koenigsberg v. Bd. of Trs. Of Columbia Univ*,
  2024 U.S. Dist. LEXIS 56894 (S.D.N.Y. Mar. 22, 2024) .......................................21

*Kolmar Ams., Inc. v. Mycone Dental Supply Co.*,
  2021 U.S. Dist. LEXIS 211923 (S.D.N.Y. Nov. 1, 2021) .........................................9

*Liu Jo S.P.A. v. Jenner*,
  630 F. Supp. 3d 501 (S.D.N.Y. 2022).....................................................................15

*McCabe v. Caribbean Cruise Line, Inc.*,
  2014 U.S. Dist. LEXIS 91116 (S.D.N.Y. July 3, 2014) .....................................10, 12

*McCabe v. ConAgra Foods, Inc.*,
  681 Fed. App'x 82 (2d Cir. 2017).............................................................................10

*Medina v. Bauer*,
  2004 U.S. Dist. LEXIS 910 (S.D.N.Y. Jan. 26, 2004) ............................................12

*Miramontes v. Ralph Lauren Corp.*,
  2023 U.S. Dist. LEXIS 78991 (S.D.N.Y. May 5, 2023) ..........................................17

*Mohammed v. Juno Inc.*,
  2019 N.Y.L.J. LEXIS 912 (Sup. Ct. N.Y. Cnty. Mar. 26, 2019)..............................10

*Mumin v. Uber Techs., Inc.*,
  239 F. Supp. 3d 507 (E.D.N.Y. 2017) .....................................................................11

iii

*New Jersey, L.L.C. v. Aetna Life Ins. Co.*,
    2024 U.S. App. LEXIS 24523 (2d Cir. Sept. 27, 2024) ........................................9, 11

*Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital,*
    *Inc.*, 30 N.Y.3d 572 (2017) ........................................................................................22

*Oden v. Boston Scientific Corp.*,
    330 F. Supp. 3d 877 (E.D.N.Y. 2018) ........................................................................18

*Ohanian v. Avis Rent A Car Sys., Inc*.,
    779 F.2d 101 (2d Cir. 1985)...................................................................................13, 14

*Olson v. Major League Baseball*,
    29 F. 4th 59 (2d Cir. 2022) ........................................................................................22

*Pittman v. Chick-fil-A, Inc.*,
    2022 U.S. Dist. LEXIS 133686 (S.D.N.Y. July 27, 2022) .........................10, 17, 18

*Quintana v. B. Braun Med., Inc.*,
    2018 U.S. Dist. LEXIS 123718 (July 24, 2018) ........................................................18

*Rauch v. CMFG Life Insurancy Co.*,
    2025 U.S. Dist. LEXIS 8510 (S.D.N.Y. Jan. 6, 2025) ...............................................15

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017).........................................................................................24

*Rivera v. ABM Indus., Inc.*,
    2023 U.S. Dist. LEXIS 177597 (E.D.N.Y. Sept. 29, 2023)........................................26

*Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*,
    705 F. Supp. 3d 194 (S.D.N.Y. 2023)...................................................................9, 11

*Scheck v. Francis*,
    33 A.D.2d 91 (1969), *aff'd*, 26 N.Y.2d 466 (1970) ...................................................14

*Shiplane Transp. Inc. v. Hwy 31 Exch. Inc.*,
    2024 U.S. Dist. LEXIS 148801 (S.D.N.Y. Aug. 19, 2024) ........................................23

*Sunward Electronics, Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004)........................................................................................24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)......................................................................................................5

*The Brandr Grp. v. Port Auth. of N.Y. & N.J*,
    2020 U.S. Dist. LEXIS 53236 (S.D.N.Y. Mar. 26, 2020) ...........................................9

*Thome v. Alexander & Louisa Calder Found.*,
  70 A.D. 3d 88 (1st Dep't 2009) ...........................................................................9

*U.S. v. Venturella*,
  391 F.3d 120 (2d Cir. 2004)...............................................................................24

*Walden v. Fiore*,
  571 U.S. 277 (2014)...........................................................................................24

*Wright v. Publishers Clearing House, Inc.*,
  439 F. Supp. 3d 102 (E.D.N.Y. 2020) ...............................................................17

*Yuille v. Uphold HQ Inc.*,
  686 F. Supp. 3d 323 (S.D.N.Y. 2003).................................................................22

*Zottola v. Eisai Inc.*,
  564 F. Supp. 3d 302 (S.D.N.Y. 2021).................................................................18

**Statutes**

New York General Business Law § 349................................................................ *passim*

General Obligations Law § 5-701 ...............................................................2, 13, 14

**Rules**

F.R.C.P. 2(b)(2) ......................................................................................................1

F.R.C.P. 12(b)(6) ....................................................................................................1

F.R.C.P. 15(a)(1).....................................................................................................8

F.R.C.P. 15(a)(2).....................................................................................................8

F.R.C.P. 41(a) ........................................................................................................26

F.R.C.P. 41(d) ...........................................................................................4, 26, 27

N.Y. C.P.L.R. 302(a) .......................................................................................24, 25

**Other Authorities**

*See* Phil Rosen*, Remember When NFTs Sold for Millions of Dollars? 95% of the Digital Collectibles May Now Be Worthless*, Business Insider (Sept. 20, 2023), https://markets.businessinsider.com/news/currencies/nft-market-crypto-digital-assets-investors-messari-mainnet-currency-tokens-2023-9 ...............................1

Meta Eagle 1968,
    https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc96077
    3a0d/1968...............................................................................................................5

Meta Eagle 4523,
    https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc96077
    3a0d/4523...............................................................................................................5

Meta Eagle 5020,
    https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc96077
    3a0d/5020...............................................................................................................5

Meta Eagle 7480,
    https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc96077
    3a0d/7480...............................................................................................................5

Meta Eagle 7781,
    https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc96077
    3a0d/7781...............................................................................................................5

Meta Eagle 7919,
    https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc96077
    3a0d/7919...............................................................................................................5

Meta Eagle 8627,
    https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc96077
    3a0d/8627...............................................................................................................5

Meta Eagle 10226,
    https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc96077
    3a0d/10226.............................................................................................................5

Meta Eagle 10513,
    https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc96077
    3a0d/10513.............................................................................................................5

Meta Eagle 10882,
    https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc96077
    3a0d/10882.............................................................................................................5

Meta Eagle 11891,
    https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc96077
    3a0d /11891...........................................................................................................5

*Terms of Service*, Galyverse (May 2022), https://galyverse.io/terms.pdf.......................6

Defendants Eden Fine Art NY Inc. ("Eden Fine Art NY"),[1] Cathie Klimovsky ("Klimovsky"), Guy Martinovsky ("Martinovsky"), Gal Yosef ("Yosef"), and Cetra Art Corporation ("Cetra,") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion pursuant to Rules 12(b)(2) and 12(b)(6) to dismiss the Complaint dated February 7, 2025 (ECF No. 1, the "Complaint" or the "Compl.") filed by Plaintiff Tekla Balfour-Browne ("Plaintiff"), on behalf of a putative class of all purchasers of Meta Eagle Club NFTs, and for reimbursement of Defendants' reasonable attorneys' fees and costs in defending against the Aamer Action (hereinafter defined).

## PRELIMINARY STATEMENT

Plaintiff allegedly purchased "Meta Eagle Club" non-fungible tokens ("NFTs") at different points in February and April 2022. Cetra originally sold the NFTs into the marketplace; there are no allegations that Eden Fine Art NY, Klimovsky, Martinovsky, or Yosef ever sold any NFTs. Those Meta Eagle Club NFTs were delivered as committed. However, like any art market, the NFT market has ups and downs, and after Plaintiff's purchases, the entire NFT market sagged.[2] Against the background of this larger market decline, Plaintiff apparently regretted his purchases. But because Plaintiff could not blame Defendants for a general market decline, he decided to manufacture a fiction: that public statements made by certain (frequently unspecified) Defendants about the Meta Eagle Club created a binding contract between each of the Defendants and anyone

---

[1]     Contrary to the allegations in the Complaint, Eden Fine Art NY only manages one store, does not own the Eden brand, only received limited rights to use the brand's name, and had nothing to do with the NFT sales at the heart of this case. Regardless, it is not necessary to make any factual findings about Eden Fine Art NY to dismiss the Complaint as against it (and as against the other Defendants).

[2]     *See* Phil Rosen, *Remember When NFTs Sold for Millions of Dollars? 95% of the Digital Collectibles May Now Be Worthless*, Business Insider (Sept. 20, 2023), https://markets.businessinsider.com/news/currencies/nft-market-crypto-digital-assets-investors-messari-mainnet-currency-tokens-2023-9.

who would ever acquire Meta Eagle Club NFTs, that any alleged deviation from those public statements constituted a breach of that contract, and that these alleged breaches – to the exclusion of any market forces – caused Plaintiff's losses.  <u>Plaintiff may have buyer's remorse, and believe that he should never have purchased the NFTs</u>.  But his story is wholly implausible and legally untenable.

Accordingly, no legal theory entitles him to recovery against Defendants.  NFTs, like any art, can appreciate or depreciate in value due to a number of factors.  NFTs as an asset class were extremely popular when the Meta Eagle Club NFTs were first released in early 2022, but the popularity of the NFT market in general then ebbed.  Instead of accepting that he bought an asset when the general market value of the NFTs was higher than it is today, Plaintiff has propounded a number of changing theories as to why Defendants should be held liable for his alleged losses.  But the Complaint's four causes of action – breach of contract, breach of the implied covenant of good faith and fair dealing, New York General Business Law ("GBL") § 349, and unjust enrichment – all fail to state a claim.

The breach of contract claim fails because Plaintiff does not allege a binding contract between Plaintiff and Defendants.  The Complaint does not allege that any Defendant even knew who Plaintiff was until he sued them.  To create a contract where there is none, Plaintiff points to various public statements describing the benefits and perks of the Meta Eagle Club as an offer that was accepted when Plaintiff purchased Meta Eagle Club NFTs.  But none of the public statements plausibly can be viewed as such.  New York courts routinely dismiss breach of contract claims in similar situations where the "contract" is a mere public statement that is more akin to an advertisement or a description of the project or services.  Even if these statements could constitute a contract, they would violate the statute of frauds, because the purported "contract" is not a signed

writing and cannot be performed within one year.  The contract claim further fails because it is pleaded against all "Defendants" collectively; it is axiomatic that a defendant cannot breach a contract to which the defendant is not a party.

The contract claim also does not sufficiently allege breach; Plaintiff himself pleads that the Meta Eagle Club did provide some benefits, and that resources were ultimately re-allocated based on a community vote of NFT-holders, not because of a unilateral decision by Defendants.

The claim for breach of the covenant of good faith and fair dealing fails for much of the same reasons.  Because Plaintiff has not pleaded the existence of a contract, there is no such covenant to breach.  Moreover, the claim improperly duplicates the breach of contract claim.

Plaintiff cannot plead a GBL § 349 claim because he is not a New York resident and did not transact in New York.  He thus cannot invoke the statute.  And because his alleged injury is the same as the alleged deception, he has no cognizable injury.  The § 349 claim also fails for failure to sufficiently plead a deceptive statement.

The unjust enrichment claim should be dismissed as duplicative of the other claims, as an unavailable equitable claim, and because it fails to plead that Defendants were enriched to Defendants' detriment.  Indeed, the Terms of Service incorporated by reference to the Complaint make clear that Cetra – and only Cetra – sold the NFTs and would receive any royalty on secondary sales.  Eden Fine Art NY, Klimovsky, Martinovsky, and Yosef did not sell any NFTs and did not receive any monies from Plaintiff whatsoever.

Additionally, the claims against Cetra and Klimovsky specifically should be dismissed as barred by the limitation of liability clause in the Meta Eagle Club Terms of Service.

Aside from Plaintiff's failure to state a claim, the Court lacks personal jurisdiction over Yosef. Yosef has never been domiciled in New York, and he is not alleged to have committed any legally relevant acts in New York.

Finally, under Rule 41(d), the Court should award Defendants their reasonable costs and expenses of defending the original action filed by Plaintiff, because of Plaintiff's abusive litigation tactics. Plaintiff initially was one of dozens of plaintiffs who filed an extremely similar non-class action under a different case number. After Defendants moved to dismiss, instead of opposing, those plaintiffs told the Court that they would amend their complaint. The Court ordered those plaintiffs to do so by February 7, 2025. Instead of amending as ordered, Plaintiff filed a new action (the instant action), making all of the time and cost spent on the previous complaint a complete waste. Defendants – an art gallery, an artist, and other individuals – should not have to bear costs needlessly inflicted by Plaintiffs' gamesmanship.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY[3]

### Relevant Facts

Plaintiff – a resident of the United Kingdom – allegedly purchased Meta Eagle Club NFTs. Compl. ¶ 11. The NFTs "were digital images created by Yosef, showing anthropomorphized eagles in various outfits and costumes." Compl. ¶ 4. On February 7, 2022, "Defendants started selling the Meta Eagle Club NFTs for Ether cryptocurrency. In total, 12,000 Meta Eagle Club NFTs were created, or in NFT parlance 'minted,' each depicting an eagle avatar." Compl. ¶ 49. "[T]ransactions to purchase Meta Eagle Club NFTs were completed on OpenSea, a NFT marketplace." *Id.* ¶ 120. The initial February 7, 2022 sale "quickly sold out." *Id.* ¶ 51.

---

[3]    Defendants do not concede the truth of any of the allegations made in the Complaint and reserve all of their rights to deny or contest any allegation made therein.

Plaintiff purchased eleven Meta Eagle Club NFTs at various points between February 7, 2022 and April 3, 2022, for a net total of 5.6875 ETH (or $17,267).  Compl. ¶ 11.  Plaintiff subsequently sold two NFTs on April 18, 2022, each for .15 ETH.  *Id.*  Plaintiff made each of his purchases via OpenSea.  *Id.*

The Complaint does not specify whether Plaintiff purchased each NFT in the initial sale, or later on the secondary market.  However, the OpenSea page for each and every Meta Eagle Club NFT that Plaintiff alleges he purchased shows that every single NFT was minted to <u>someone else</u> and then sold to him afterwards, meaning that every one of those purchases was on a secondary market, in a purchase not involving any of the Defendants.[4]

The Complaint alleges that purchasing a Meta Eagle Club NFT provided holders with membership in the "Meta Eagle Club," which afforded certain benefits.  Compl. ¶ 32.  The Complaint further asserts that the "Galyverse was a purported digital universe that was supposed

---

[4]    Each Meta Eagle has a page on OpenSea that shows the NFT's transaction history from the moment it was "minted" (created) to present.  The link for each NFT purchased by Plaintiff under the account name "Techie-BB" is provided here: Meta Eagle 5020, https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc960773a0d/5020; Meta Eagle 1968, https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc960773a0d/1968; Meta Eagle 7480, https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc960773a0d/7480; Meta Eagle 7781, https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc960773a0d/7781; Meta Eagle 8627, https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc960773a0d/8627; Meta Eagle 10226, https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc960773a0d/10226; Meta Eagle 10882, https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc960773a0d/10882; Meta Eagle 10513, https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc960773a0d/10513; Meta Eagle 4523, https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc960773a0d/4523; Meta Eagle 11891, https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc960773a0d/11891; Meta Eagle 7919, https://opensea.io/item/ethereum/0xeb6dffb87315a2bdf4dedf72b993adc960773a0d/7919.  The Court can consider the OpenSea pages for each of Plaintiff's transactions because they are incorporated by reference in the Complaint and/or are relied upon by it.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 332 (2007); Compl. ¶ 11.

to display, promote, and sell Meta Eagle Club NFTs and also showcase Eden Gallery's array of digital artworks.  The Galyverse was located on the Internet."  Compl. ¶ 33.

The Complaint alleges that "Defendants" initially sold Meta Eagle Club NFTs to the public.  Compl. ¶ 49.  However, according to the Terms of Service explicitly incorporated by reference in the Complaint (which thus can be considered on this Motion), *id.* ¶ 54,[5] Cetra – and not any other Defendant – was the entity that initially sold the NFTs.  Terms of Service § 2.4. The Terms of Service also state that purchasers could only purchase up to two NFTs.  *Id.*

Plaintiff asserts that "Defendants, through Cetra" would "receive a ten percent (10%) royalty on all secondary sales of Meta Eagle Club NFTs."  Compl. ¶ 52.  The Terms of Service state that the royalty is paid to Cetra and do not state that any other Defendant will receive any royalty.  Terms of Service § 2.4.

The Terms of Service contain a number of important disclaimers.  In particular, § 7.1 clearly states (typos in original) that "[t]he Services and content thereon, including any NFT and/or Item, are provided on an AS IS and AS AVAILABLE basis without warranties of any kind.  … NFT's are not intended for speculative use, are not sold or represented to be financial product and nothing the Company publish is In any way financial advice to you or any other person."  Section 7.2 contains several disclaimers of all warranties of any kind.  Section 7.3 adds that "[n]o advice or information, whether oral or written, obtained by you from us, shall create any warranty that is not expressly stated in these Terms.  If you choose to rely on such information, you do so solely at your own risk."

---

[5]    *Terms of Service*, Galyverse (May 2022), https://galyverse.io/terms.pdf.  For convenience, the publicly-available Terms of Service are attached as **Exhibit A** to the March 31, 2025 Declaration of Jason Gottlieb.

The Terms of Service could not be clearer regarding the risk of seeing NFTs and other digital assets as an investment, in capital lettering to underscore their importance to the reader. For example, § 7.6 states: "… A LACK OF USE OR PUBLIC INTEREST AND NEW REGULATIONS OR POLICIES MAY MATERIALLY ADVERSELY AFFECT THE PROVISION OF THE SERVICES AND THE UTILITY OF NFT(S); COMPANY WILL NOT BE LIABLE FOR THE CONSEQUENCES OF ANY SUCH EFFECTS" (capitalization in original).  Section 7.7 adds that "YOU ACKNOWLEDGE THAT THE VALUE OF NFT(S) ARE SUBJECT TO VOLATILITY AND FLUCTUATIONS IN THE PRICE OF CRYPTOCURRENCY THUS CAN ALSO MATERIALLY AND ADVERSELY AFFECT NFT PRICES" (capitalization in original).

The Terms of Service also contain a limitation on liability clause stating that Cetra and its "affiliates or any of their officers, employees, assignees, or agents" are not liable for "any damages whatsoever," explicitly arising out of, among other things, the use of NFTs.  Terms of Service § 8.4.

**Plaintiff Originally Filed a Now-Dismissed Separate Action**

Plaintiff initially was one of thirty-six plaintiffs (out of thousands of users) in an action under a different case caption, *Aamer, et al. v. Eden Gallery Group Ltd., et al.*, Case No. 1:24-cv-07678 (the "Aamer Action").  The Plaintiffs in the Aamer action were represented by the same counsel as here, made similar allegations, and named Martinovsky, Klimovsky, Yosef, Cetra, and Eden Gallery Group Ltd. as defendants.  After the defendants in the Aamer Action moved to dismiss (the "Aamer Motion to Dismiss"), the Plaintiffs in the Aamer Action represented to the Court that instead of opposing the Aamer Motion to Dismiss, they would amend the Complaint in the Aamer Action.  Aamer Action, ECF No. 27.  On January 13, 2025, the Court in the Aamer

Action then ordered that the "deadline for Plaintiffs [in the Aamer Action] to amend the Complaint is EXTENDED until February 7, 2025."  Aamer Action, ECF No. 28 (the "January 13 Order").

Yet, instead of amending the complaint in the Aamer Action, Plaintiff filed the instant plenary action, in violation of the January 13 Order, forcing Defendants[6] to expend resources responding to a new action and a new set of theories.  The plaintiffs in the *Aamer* action subsequently voluntarily dismissed the *Aamer* action.

Plaintiff has stated to the Court that the Complaint here "will be treated as if the right to amend as a matter of course pursuant to Rule 15(a)(1) has already occurred.  Any amendment to the *Balfour-Browne* complaint will be sought through leave of court or written consent of the *Balfour-Browne* defendants pursuant to Rule 15(a)(2)."  ECF No. 29 at 2.  Regardless, Plaintiff's gamesmanship should not preclude an award of fees and costs associated with Defendants' added expense in evaluating and responding to an entirely new action.

## ARGUMENT[7]

## I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

### A.    Plaintiff Fails to Sufficiently Allege the Existence of a Contract

The breach of contract claim rests on the fundamentally flawed contention that various statements supposedly made by "Defendants" in various public fora constitute an enforceable contract with Plaintiff.  That is not the law.

---

[6]    This action did not name Eden Gallery Group Ltd. as a defendant, instead naming Eden Fine Art NY.

[7]    The Complaint does not allege what state's law applies to Plaintiff's common law claims. Given the fact that Plaintiff and Defendants collectively reside in different jurisdictions, and the Terms of Service are governed by New York law, Defendants utilize New York law on this motion. If the Court determines that another state's law applies to the common law claims, Defendants respectfully request that they be permitted to file a supplement describing that state's law.

"To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019). "A valid contract requires an offer, acceptance, consideration, mutual assent, and an intent to be bound." *New Jersey, L.L.C. v. Aetna Life Ins. Co.*, 2024 U.S. App. LEXIS 24523, at *5 (2d Cir. Sept. 27, 2024). "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, 705 F. Supp. 3d 194, 202 (S.D.N.Y. 2023) (internal citations, quotation marks, and brackets omitted). "For an invitation to constitute an offer, it must be plain and clear enough to establish the intended terms of the proposed contract." *Thome v. Alexander & Louisa Calder Found.*, 70 A.D. 3d 88, 104 (1st Dep't 2009) (website language was "too vague to establish the terms of a contract"). There must be clear acceptance and a "meeting of the minds and a manifestation of mutual assent that is sufficiently definite to assure that the parties are truly in agreement with respect to all material terms as to form a binding enforceable contract." *Kolmar Ams., Inc. v. Mycone Dental Supply Co.*, 2021 U.S. Dist. LEXIS 211923, at *15 (S.D.N.Y. Nov. 1, 2021) (quotation marks omitted). Compensation and consideration are material terms of a contract. *See The Brandr Grp. v. Port Auth. of N.Y. & N.J*, 2020 U.S. Dist. LEXIS 53236, at *8 (S.D.N.Y. Mar. 26, 2020).

Plaintiff has not sufficiently pleaded these foundational elements of contract formation. Plaintiff claims a contract existed because "Defendants" made certain statements to the public describing the "benefits and perks" of the Meta Eagle Club. *See* Compl. ¶¶ 98-101. But the Complaint does not articulate a plain and clear offer or an intent to be bound; it instead alleges that "Defendants" simply described the Meta Eagle Club to the public, more akin to an effort to build

excitement about the project. And to the extent these statements could be read as akin to an advertisement, the "general rule in New York is that a promotion or advertisement is not an offer." *McCabe v. ConAgra Foods, Inc.*, 681 Fed. App'x 82, 84 (2d Cir. 2017). Similarly, there are no factual allegations of any "meeting of the minds" concerning agreement on terms, or indeed of any relationship whatsoever between Plaintiff and Defendants.

Accordingly, the vague statements about the Meta Eagle Club do not suffice to form a contract, and courts have routinely dismissed contract claims based on similar public statements that did not meet the elements of contract formation. *See, e.g.*, *Pittman v. Chick-fil-A, Inc.*, 2022 U.S. Dist. LEXIS 133686, at *17-18 (S.D.N.Y. July 27, 2022) ("low-cost delivery promises on [defendant's] mobile application and on its website" do "not present, in nonconclusory fashion, the specific terms of any purported agreement between Pittman and CFA"); *Barron v. Helbiz Inc.*, 2023 U.S. Dist. LEXIS 155324, at *28-29 (S.D.N.Y. Aug. 31, 2023) (whitepaper describing release of cryptocurrency token, including "the official promise of HELBIZ and the team as to what they were undertaking to do with the funds raised, their commitment to the value proposition for the coin, and other material representations … does not read as an offer that conveys an intent to be bound. Rather it is a marketing material, a sales tactic more akin to a promotion or an advertisement") (internal quotations omitted); *McCabe v. Caribbean Cruise Line, Inc.*, 2014 U.S. Dist. LEXIS 91116, at *13 (S.D.N.Y. July 3, 2014) (allegations of prerecorded phone call promising a free cruise in exchange for completing a survey "is simply too vague and indefinite to plausibly establish the existence of a contract"); *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 645 (S.D.N.Y. 2011) (granting judgment on the pleadings as to claim that cable company breached contract to provide high speed internet due to plaintiff's "simple characterization of the nature of the promise, and the equally simplistic allegation that Defendant failed to perform. ...");

*Mohammed v. Juno Inc.*, 2019 N.Y.L.J. LEXIS 912, at *21 (Sup. Ct. N.Y. Cnty. Mar. 26, 2019) ("representations made through media outlets and on [defendant's] app and website" did not constitute a contract); *Rowe*, 705 F. Supp. 3d at 202-03 (defendant's employee's description of plan benefits did not constitute an offer and dismissing contract claim); *Edwards v. Sequoia Fund, Inc.*, 2018 U.S. Dist. LEXIS 180993, at *10 (S.D.N.Y. Oct. 18, 2018) (dismissing contract claim and finding no meeting of the minds where an investment policy "adopted by Defendant alone" was alleged to have been breached).

Additionally, the breach of contract claim fails because the supposed "contract" does not include any terms concerning price. Defendants could not have made any "sufficiently definite" offers to Plaintiff that included pricing terms because, as explained above, Plaintiff purchased all eleven of his Meta Eagles on the secondary market from resellers. *See New Jersey, L.L.C.*, 2024 U.S. App. LEXIS 24523, at *6 (affirming dismissal of contract claim due to, among others, lack of definite details regarding price); *Ridenhour*, 2020 U.S. Dist. LEXIS 55772, at *12-14 (dismissing contract claim because the agreement "lacks a definite price term"); *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 536 (E.D.N.Y. 2017) (representations to riders that "tip is included" did not constitute an agreement "as to the amount of the tip—arguably the most important term of the alleged implied-in-fact contract.").

Plaintiff's allegation that some of Defendants' statements formed a contract with all future NFT purchasers, even those who purchased on the secondary market, violates the ancient precept that knowledge of the identity of one's counterparty is a crucial component of establishing a meeting of the minds. *See Arkansas Valley Smelton Co. v. Belden Mining Co.*, 127 U.S. 379, 387 (1888) ("But every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent").

The Complaint also implausibly and vaguely alleges that Plaintiff "and the Class" somehow entered into a contract with "Defendants" writ large. Compl. ¶ 101. It is impermissible for Plaintiff to lump all Defendants together and assert the same claim against each of them. *See McCabe v. Caribbean Cruise Line, Inc.*, 2014 U.S. Dist. LEXIS 91116, at *6-7 (E.D.N.Y. July 3, 2014) (dismissing complaint that "impermissibly 'lumps' the defendants together"). *See also Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001) (Rule 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."); *Medina v. Bauer*, 2004 U.S. Dist. LEXIS 910, at *18 (S.D.N.Y. Jan. 26, 2004) ("By lumping all the defendants together and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the requirements of Rule 8").

### B.    Plaintiff Fails to Sufficiently Allege Breach

Even if a contract exists, the breach of contract claim also fails because Plaintiff does not sufficiently allege that Defendants breached it. The crux of Plaintiff's contract claim is that Defendants promised certain "benefits" of the Meta Eagle Club, but "Defendants abandoned the Meta Eagle Club, failed to develop the Meta Eagle Club, and failed to provide the promised benefits of the Meta Eagle Club." Compl. ¶ 103. But the pleaded allegations illustrate that Meta Eagle Club members did receive most of the promised benefits. *Id.* ¶ 72. And crucially, contrary to Plaintiff's conclusory allegation that "Defendants abandoned the Meta Eagle Club," the pleaded allegations show that a community vote occurred as to how to "reallocate the budget of the remaining items from the Roadmap" and use "resources" to "focus on … alternative utilities" in light of purchasers' lack of interest in the originally planned utilities and the changing markets. *Id.* ¶¶ 74-75. Thus, Plaintiff's own pleading confirms that it was NFT holders themselves – not the amorphous "Defendants" – that voted to reallocate resources; it was not "Defendants" that breached anything.

Plaintiff's theory of breach is also implausible and nonsensical because Plaintiff alleges that "the list of provided benefits" should have totaled over $13 million, the amount allegedly raised in the mint. Compl. ¶ 73. But Plaintiff does not plead any actual facts showing any promises that purchasers would receive $13 million in benefits. If there was any "bargain," the benefit clearly was the NFT itself, which of course fluctuates in price pursuant to market forces, as stated in the Terms of Service.

Further, as noted above, because there are no pleaded allegations about which particular Defendant even entered the "contract," there can be no breach of contract claim. It is black letter law that a party cannot breach a contract to which it is not a party. *See Kamdem-Oaffo v. PepsiCo, Inc.*, 2015 U.S. Dist. LEXIS 28497, at *23-24 (S.D.N.Y. Mar. 9, 2015) ("It is hornbook law that an entity must be a party to a contract for a claim of breach of that contract to lie").

Moreover, Plaintiff's central theory that it somehow was a breach of contract to alter the original plan for the Meta Eagle Club based on changing market forces is implausible and contrary to commercial reality. As explained in *Barron*, to find a breach of contract in a similar set of circumstances concerning "broad generalizations made in the Whitepaper regarding future performance … would be to hamstring defendants to one business plan, with no room for organic growth or pivots in other directions." *Barron*, 2023 U.S. Dist. LEXIS 155324, at *28.

## C. Even if a Contract Exists, It is Barred by the Statute of Frauds

New York's statute of frauds, memorialized at General Obligations Law § 5-701, voids any agreement, which "[b]y its terms is not to be performed within one year from the making thereof … unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith." A contract cannot be performed within one year if it is "if it is terminable within that time only upon the breach of one of the parties." *Ohanian v. Avis Rent A Car Sys., Inc.*, 779 F.2d 101, 107 (2d Cir. 1985). Plaintiff's contract theory violates the statute of frauds

because the Complaint does not allege an agreement <u>in writing and subscribed by the party to be charged therewith</u>, and the alleged contract cannot be performed within one year.  Specifically, Plaintiff alleges that Defendants' contractual obligations include: "creat[ing] a long-term ecosystem," effecting "long term milestones," supporting "longevity" for the community, building a "long-term relation with today's 6,000 [Meta Eagle owners]," and creating "long-term value" for the Meta Eagle Club NFTS.  *See* Compl. ¶¶ 39, 53, 54, 55, 132.  Defendants thus could not have terminated the contract within one year without being in breach, and a "contract is not to be performed within a year if it is terminable within that time only upon the breach of one of the parties."  *Ohanian v. Avis Rent A Car System, Inc.*, 779 F.2d 101, 107 (2d Cir. 1985).

The alleged agreement does not satisfy the "in writing" and signature requirement of GOL § 5-701 because even if certain supposed obligations allegedly were memorialized in writing, none were signed.  The signature requirement is clear: "[c]ertainly, where reference to several writings is required to ascertain the terms of the alleged note or memorandum, the statutory provision for a subscription requires a signature made with an intent to authenticate statements in existing writings as a note or memorandum of the alleged agreement."  *See Scheck v. Francis*, 33 A.D.2d 91, 94 (1969), *aff'd*, 26 N.Y.2d 466 (1970).  *See also Kaplan v. Old Mut., PLC*, 2009 U.S. Dist. LEXIS 134174, at *12 (S.D.N.Y. July 10, 2009) (to satisfy the statute of frauds, at least one document must be "signed with intent to authenticate the information contained therein").  Plaintiff has not pointed to any document that was signed by Defendants, much less signed with an "intent to authenticate" writings as a memorandum of an agreement.

## II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"[I]mplicit in every contract is a covenant of good faith and fair dealing which encompasses any promises that a reasonable promisee would understand to be included."  *JN Contemporary Art*

*LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (quotation marks and ellipses omitted).  The "implied covenant of good faith and fair dealing includes a promise that neither party to a contract shall do anything that has the effect of destroying or injuring the right of the other party to receive the fruits of the contract, or to violate the party's presumed intentions or reasonable expectations."  *Id.* (quotation marks omitted).

Plaintiff's claim for breach of the covenant of good faith and fair dealing fails for multiple reasons.  First, as explained above, Plaintiff has not sufficiently pleaded the existence of a contract between the parties.  Because no contract exists, there can be no claim for breach of the covenant of good faith and fair dealing.  *See Liu Jo S.P.A. v. Jenner*, 630 F. Supp. 3d 501, 518 (S.D.N.Y. 2022) ("A cause of action based upon a breach of a covenant of good faith and fair dealing requires a contractual obligation between the parties.  Because no such contract exists between Liu Jo and Elite and Society, Liu Jo has failed to state a claim of breach of the implied covenant of good faith against Elite or Society").

Second, a "claim for violation of the covenant [of good faith and fair dealing] survives a motion to dismiss only if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract."  *JN*, 29 F.4th at 128.  "Practically, a breach of the implied covenant of good faith and fair dealing requires the pleader to identify an obligation which supports the written terms of the agreement itself but is not *in haec verba* contained therein."  *Rauch v. CMFG Life Insurance Co.*, 2025 U.S. Dist. LEXIS 8510, at *8 (S.D.N.Y. Jan. 6, 2025).  Courts routinely dismiss claims for breach of the covenant of good faith and fair dealing that merely duplicate a contract claim.  *See JN*, 29 F.4th at 128 (affirming dismissal because "the damages sought for both claims would be the same"); *Charter Contr. Co. v. Orange & Rockland Utils., Inc.*, 2020 U.S. Dist. LEXIS

244706, at *14 (S.D.N.Y. Dec. 30, 2020) (dismissing claim that "is predicated on the same alleged facts as its breach of contract claim.").

Here, the claim for breach of the covenant of good faith and fair dealing duplicates the breach of contract claim.  They are both premised on the same alleged "breach" – that Defendants failed to provide holders of Meta Eagle Club NFTs with certain promised benefits, and ultimately stopped operating the club.  *Compare* Compl. ¶ 103 *with id.* ¶ 111.

Third, just like the claim for breach of contract, the claim for breach of the covenant of good faith and fair dealing is inappropriately group pleaded.

Fourth, for the same reasons that Plaintiff has not sufficiently pleaded a breach of contract (as explained above), he has not sufficiently pleaded a breach of the covenant of good faith and fair dealing.

## III.     THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF GBL § 349

### A.     Plaintiff Cannot Invoke GBL § 349 Because He Did Not Enter Into a Transaction In New York

Plaintiff is a non-New York resident and there are no factual allegations that Plaintiff's specific transactions had connection to New York sufficient state a claim under GBL § 349.

In *Cruz v. Fxdirectdealer*, 720 F.3d 115 (2d Cir. 2013) the Second Circuit held that GBL § 349 can be invoked by an out-of-state plaintiff only in limited circumstances, depending on "the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than on the residency of the parties."  720 F.3d at 122 (citations and quotations omitted).  In order to establish a GBL § 349 claim, there must be a "sufficient nexus between [plaintiff's] transactions … and New York."  *Id.*  This test built upon the standard set forth by the New York Court of Appeals in *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314 (2002) which cautioned against "an unwarranted expansive reading of the statute" which could lead "to

the nationwide, if not global application of General Business Law § 349." 98 N.Y.2d at 325. The Court of Appeals in *Goshen* further explained that "hatching a scheme" or "originating a marketing campaign" in New York did not, in and of itself, did not fall into the statute's ambit; what matters is that "the transaction in which the consumer is deceived must occur in New York." *Id.* at 324.

Courts, applying *Cruz* and *Goshen*, routinely dismiss GBL § 349 claims where the location of the transaction is not in New York. *See Fishton v. Peloton Interactive, Inc.*, 2020 U.S. Dist. LEXIS 208861, at *38-43 (S.D.N.Y. Nov. 9, 2020) (dismissing GBL § 349 claim by non-New York plaintiff even though defendant's principal place of business was New York and the relevant contract contained a New York choice of law clause); *Miramontes v. Ralph Lauren Corp.*, 2023 U.S. Dist. LEXIS 78991, at *12 (S.D.N.Y. May 5, 2023) (dismissing GBL § 349 claim even though defendant was located in New York, because plaintiff was a "Texan who saw the label and purchased the sweater in Texas"); *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110-12 (E.D.N.Y. 2020) (dismissing GBL § 349 claim even though plaintiffs received advertisements from a seller in New York, transaction was processed in New York, and agreement contained New York choice of law provision).

Here, Plaintiff is a resident of the United Kingdom. Compl. ¶ 11. And while Plaintiffs allege in conclusory fashion that Defendants "engag[ed] in consumer-oriented trade or commerce within the State of New York during the time period relevant hereto," the Complaint contains no <u>facts</u> that Plaintiff's specific NFT transactions took place in New York (or had any connection to New York), which is required to implicate the statute.

### B.    <u>Plaintiff Has Not Sufficiently Pleaded a Cognizable Injury</u>

To establish an injury under GBL § 349, a "plaintiff must allege that, on account of a materially misleading practice, the plaintiff purchased a product and did not receive the full value of the purchase. However, the deceptive conduct cannot be pled as both act and injury, because

deception alone is not actual injury." *Pittman v. Chick-fil-A, Inc.*, 2022 U.S. Dist. LEXIS 133686, at *13-14 (S.D.N.Y. July 27, 2022) (internal citations, quotation marks, and brackets omitted). Accordingly, where the plaintiff's theory is that "she would not have placed her order if she knew" about the deceptive conduct, "this statement amounts to an allegation of deception as both act and injury, which is insufficient to plead a claim under Section 349." *Id.* at *16. *See also Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 310 (S.D.N.Y. 2021) (dismissing GBL § 349 claim where "Plaintiff alleges that she and other putative class members would not have purchased the Medications absent Defendants' alleged misrepresentations"). In other words, a plaintiff cannot allege an injury by merely asserting payment of the purchase price due to deceptive conduct. Allegation of some other injury is required. *Id.*

Plaintiff pleads that "[i]f consumers had known the truth concerning Defendants' deceptive statements consumers would not have purchased the Meta Eagle Club NFTs." Compl. ¶ 136. That is precisely the type of allegation that fails to state a cognizable injury under the above-cited case law, because the allegedly deceptive conduct is both act and injury.

### C.     The Complaint Fails to Sufficiently Allege that Plaintiff Saw the Allegedly Deceptive Statements

Although GBL § 349 does not require reliance, Plaintiff still must establish that he sustained injury as a result of the allegedly deceptive conduct. *See Pittman*, 2022 U.S. Dist. LEXIS 133686, at *16. Courts therefore will dismiss GBL § 349 claims that fail to plead that the plaintiff ever saw the allegedly deceptive statements or that the injury has any relationship to the statements. *See Quintana v. B. Braun Med., Inc.*, 2018 U.S. Dist. LEXIS 123718, at *28 (July 24, 2018) (dismissing GBL § 349 claim where "[t]hese allegations do not suggest Plaintiff ever saw these statements and under what circumstances"); *Oden v. Boston Scientific Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018) (dismissing GBL § 349 claim where "[n]one of these allegations provides

any indication that Plaintiff ever saw these statements and, to the extent he did, where, when and how Plaintiff came to view either the website or the product brochure.").

The Complaint here pleads a number of different statements purportedly made by "Defendants", but does not actually allege that Plaintiff actually saw any of them.  That failure requires dismissal of the claim.

### D. <u>The Complaint Fails to Plead a Deceptive Statement</u>

The GBL § 349 claim also should be dismissed for failure to plead a deceptive statement. As explained above, there are no pleaded misstatements that were untrue at the time they were made; ultimately, as the Complaint acknowledges, Meta Eagle Club NFT holders did receive certain benefits and ultimately a community vote occurred as to how to reallocate resources.

Additionally, as the Second Circuit has explained, "the presence of a disclaimer or similar clarifying language may defeat a claim of deception" under GBL § 349.  *Bates v. Abbott Labs.*, 2025 U.S. App. LEXIS 496, at *3 (2d Cir. Jan. 10, 2025).  *See also Herrick v. Grindr LLC*, 765 Fed App'x 586, 593 (2d Cir. 2019) ("In view of the disclaimers in the Terms of Service, Herrick has failed to plausibly allege that a reasonable consumer would be misled by Grindr's statements, and the district court therefore did not err in dismissing the claims under GBL §§ 349 and 350"). Here, the disclaimers in the Terms of Service preclude any claim that Plaintiff was deceived.

As noted above, among other things, the Terms of Service warns users (typos in original):

- "NFTs are not intended for speculative use, are not sold or represented to be financial product and nothing the Company publish is In any way financial advice to you or any other person."  Terms of Service § 7.1.

19

- "No advice or information, whether oral or written, obtained by you from us, shall create any warranty that is not expressly stated in these Terms.  If you choose to rely on such information, you do so solely at your own risk."  *Id.* § 7.3.

- "… A LACK OF USE OR PUBLIC INTEREST AND NEW REGULATIONS OR POLICIES MAY MATERIALLY ADVERSELY AFFECT THE PROVISION OF THE SERVICES AND THE UTILITY OF NFT(S); COMPANY WILL NOT BE LIABLE FOR THE CONSEQUENCES OF ANY SUCH EFFECTS."  *Id.* § 7.6

- "YOU ACKNOWLEDGE THAT THE VALUE OF NFT(S) ARE SUBJECT TO VOLATILITY AND FLUCTUATIONS IN THE PRICE OF CRYPTOCURRENCY THUS CAN ALSO MATERIALLY AND ADVERSELY AFFECT NFT PRICES."  *Id.* § 7.7.

Any user thus would know that there was a significant risk that the NFT market would change over time.  Plaintiff could not have been deceived into thinking that the statements made in advance of the mint would be set in stone.

Finally, as with the other claims, Plaintiff improperly pleads that "Defendants" collectively violated GBL § 349, without differentiating between them, or explaining what Defendant made what allegedly deceptive statement.

## IV.    THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

### A.    <u>The Unjust Enrichment Claim Improperly Duplicates the Other Claims</u>

To establish a claim for unjust enrichment, the plaintiff must sufficiently plead that "(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) that it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff."  *Advanced Knowledge Tech., LLC v. Fleitas*, 2021 U.S. Dist. LEXIS 247723, at *13-14 (S.D.N.Y. Dec. 28, 2021) (citation and quotation marks omitted).  A "claim for unjust enrichment will not be available where it simply

duplicates, or replaces, a conventional contract or tort claim.  Indeed, unjust enrichment is not a catchall cause of action to be used where others fail.  Rather, unjust enrichment under New York law is an equitable claim that is unavailable where an adequate remedy at law exists." *Id.* at *14 (citation and quotation marks omitted).  *See also Koenigsberg v. Bd. of Trs. Of Columbia Univ.*, 2024 U.S. Dist. LEXIS 56894, at *31-33 (S.D.N.Y. Mar. 22, 2024) ("Plaintiffs have not explained why their unjust enrichment claim is not duplicative of their GBL claims. ... To the extent any of Plaintiff's other claims succeed, the unjust enrichment claim would be duplicative; to the extent they do not succeed, the unjust enrichment claim would not remedy the defects") (citations and quotation marks omitted); *Rider*, 657 F. Supp. 3d at 502 ("[U]ltimately, the plaintiffs' unjust enrichment claim simply repackages the same theories of harm alleged in its contract action. Accordingly, the unjust enrichment claim must be dismissed as duplicative.").

Plaintiff premises the unjust enrichment claim on his other claims:  Plaintiff alleges that the "unlawful conduct" underlying the unjust enrichment claim includes Defendants' alleged "breaches of contract, breach of the duty of good faith and fair dealing, or deceptive acts and practices in connection with the offer and sale of Meta Club NFTs."  Compl. ¶ 144.  Plaintiff further alleges that "Defendants created a club, marketing membership with access to exclusive benefits, then abandoned the club after holding two events."  *Id.*  That is the same set of facts underlying the other claims.  *See id.* ¶¶ 98, 103, 110-11, 121-24.

The unjust enrichment claim also fails because "an adequate remedy at law exists."  *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l, N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) (citation omitted).  The Complaint plainly seeks monetary damages.  *See* Compl. Prayer For Relief ¶ A.

B.    **The Complaint Fails to Sufficiently Plead that Defendants Were Enriched at Plaintiff's Expense**

The Complaint fails to sufficiently plead that "Defendants" were enriched at Plaintiff's behalf.  As noted above, Plaintiff purchased NFTs on different dates, on the secondary market, from third parties.  Although royalties from every secondary sale were paid to Cetra, there are no well-pleaded allegations that any other Defendant was enriched.  Compl. ¶ 52.[8]  Terms of Service § 2.4.  As noted above, group-pleaded allegations against all Defendants do not state a claim.

Plaintiff also fail to plead Defendants' enrichment because "while a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment, there must exist a relationship or connection between the parties that is not too attenuated."  *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (2012).  The Complaint does not plead any relationship between Plaintiff and Defendants (and certainly not <u>all</u> Defendants).

Additionally, for the same reason that the virtually identical other causes of action fail to state a claim, the Complaint also fails to plead any facts that Defendants' actions were unjust, or that Defendants acted inequitably.  *See Olson v. Major League Baseball*, 29 F. 4th 59, 86 (2d Cir. 2022).

V.    **THE LIMITATION OF LIABILITY CLAUSE IN THE TERMS OF SERVICE BARS THE CLAIMS AGAINST CETRA AND KLIMOVSKY**

"[C]ourts must honor contractual provisions that limit liability or damages because those provisions represent the parties' agreement on the allocation of the risk of economic loss in certain eventualities."  *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 30 N.Y.3d 572, 581, (2017) (citation omitted).  Courts will apply limitation of liability

---

[8]    The Complaint alleges in conclusory fashion that these royalties went to all Defendants "through Cetra."  *Id.*  To the extent that the Complaint is attempting to pierce the corporate veil, Plaintiff has not met the high bar to ignore corporate separateness.

provisions found in terms of service.  *See Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 354 (S.D.N.Y. 2003).

The Terms of Service referenced in the Complaint, Compl. ¶ 14, bar claims against the "Company" (defined in the Terms of Service as Cetra) and its affiliates, officers, employees, assignees, or agents for "any damages whatsoever, including without limitation indirect, incidental, special, punitive, or consequential damages" relating to, among other things, the NFTs. Terms of Service § 8.4.  Because Plaintiff's claims all stem from his purchase of Meta Eagle Club NFTs, his claims against Cetra are barred.  And because Plaintiff alleges that Klimovsky is an officer, director, and owner of Cetra, Compl. ¶ 15, the limitation of liability clause bars any claims against her as well.

## VI.    THE COURT LACKS PERSONAL JURISDICTION OVER YOSEF

"In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction."  *Shiplane Transp. Inc. v. Hwy 31 Exch. Inc.*, 2024 U.S. Dist. LEXIS 148801, at *8 (S.D.N.Y. Aug. 19, 2024 (citation omitted).  The Court must engage in a two-part analysis to determine whether there is personal jurisdiction over a non-resident.  *Id.*  First, the Court must determine whether the exercise of jurisdiction is appropriate under the New York long-arm statute.  Second, the Court must determine whether such exercise comports with due process. *Id.*  Plaintiff fails to meet his burden.

### A.    The Court Lacks General Personal Jurisdiction Over Yosef

"General personal jurisdiction subjects a defendant to suit on all claims."  *Huang v. Valarshash LLC*, 2023 U.S. Dist. LEXIS 167491, at *2 (S.D.N.Y. Sept. 20, 2023 (citation omitted).  Under *Daimler AG v. Bauman*, 571 U.S. 117 (2014), "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there.  For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Id.* at 137

(citations, quotation marks, brackets, and ellipses omitted).  "Owning property in a forum does not alone establish domicile.  One may have more than one residence in different parts of this country or the world, but a person may have only one domicile."  *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017 (quotation marks omitted) (no general jurisdiction over individuals who are not domiciled in New York).  A person's domicile "is a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere."  *U.S. v. Venturella*, 391 F.3d 120, 125 (2d Cir. 2004).

The Complaint alleges that Yosef "is a resident of Israel and Miami Florida," and asserts, upon information and belief, that "during times relevant to this Complaint, Yosef was a resident of New York, NY and/or owned or rented a residence in New York, NY."  Tellingly, the Complaint contains no allegations about Yosef's domicile.  That is because Yosef has never been domiciled in New York, and is currently domiciled in Florida.  He originally was domiciled in Israel. Declaration of Gal Yosef dated March 27, 2025 ¶ 5.  He arrived in New York in January 2022, but only stayed there for a few months, and did not intend to make New York his domicile.  *Id.* ¶ 6. After he went back to Israel, Florida became his domicile beginning June 2022; it remains his domicile to this day.  *Id.* ¶ 7.  Because Yosef was not domiciled in New York at the time of the allegations or the time of the filing of the Complaint, he is not subject to general jurisdiction.

### B.    The Court Lacks Specific Personal Jurisdiction Over Yosef

 "Specific personal jurisdiction subjects a defendant to suit only on claims that arise from the defendant's conduct in the forum."  *Huang*, 2023 U.S. Dist. LEXIS 167491, at *4 (citation omitted).  New York's long arm statute for specific jurisdiction is CPLR 302(a).  Specific jurisdiction must also comport with due process.  "[F]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  "Due process requires that a

defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the state." *Id.* at 286.  A "plaintiff must establish the court's jurisdiction with respect to each claim asserted." *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

The Complaint does not specify the subsection of CPLR 302(a) on which Plaintiff relies. In any event, Yosef was merely the artist the created the design for the NFTs, and the Complaint contains no <u>factual allegations</u> Yosef himself specifically transacted any business in New York, committed any tortious act in New York, committed any tortious act outside New York causing injury within the state, regularly conducted business or derived substantial revenue in New York, or expected any acts to have consequences in the state.[9]  Thus, there is no nexus between Plaintiffs' claims and Yosef's connections with New York.

The <u>only</u> allegation in the entire Complaint of anything whatsoever occurring in New York is a March 15, 2022 free party for Meta Eagle Club NFT holders at a gallery location in SoHo. Compl. ¶ 9.  Plaintiff has not pleaded any facts connecting this fact to any of the subsections in CPLR 302.  Though Plaintiff alleges that Yosef attended the party, *id.*, ¶ 64, and alleges how the party was described in the "Eden Gallery website," the Complaint does not allege that this party had anything to do with the alleged statements that form the basis for Plaintiff's four claims.  To the contrary, Plaintiff does not allege that he attended this party and does not allege that the party had any relevance to his NFT purchases – indeed, he bought ten of his eleven NFTs prior to the party.  *Id.* ¶ 11.

---

[9]     Plaintiffs cannot rely on the many group-pleaded allegations against "Defendants" to establish jurisdiction.  "Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant."  *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021).

Likewise, specific jurisdiction over Yosef would not comport with due process.  *See Johnson v. UBS AG*, 791 F. App'x 240, 242 (2d Cir. 2019) ("neither the complaint nor any of the other documents in the record suggest that UBS's connections with New York relate to the circumstances of this case").

## VII.    THE COURT SHOULD AWARD DEFENDANTS THEIR REASONABLE ATTORNEYS' FEES AND COSTS IN DEFENDING THE AAMER ACTION

As explained above, this is the second litigation filed by Plaintiff (and the same set of attorneys), forcing Defendants to unnecessarily expend resources.  In light of Plaintiff's bad faith litigation tactics, the Court should exercise its discretion under Rule 41(d) to award Defendants reasonable fees and costs in defending the now-dismissed Aamer Action.

Rule 41(d) provides in pertinent part that "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action."  The Second Circuit has interpreted "costs" to include attorneys' fees.  *Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 24-26 (2d Cir. 2018).  "Rule 41(d)'s purpose is clear and undisputed: to serve as a deterrent to … vexatious litigation."  *Id.* at 25.  "Even when a dismissal by plaintiff is a matter of right under Rule 41(a), expenses may be imposed pursuant to Rule 41(d) should the suit be reconstituted."  *Rivera v. ABM Indus., Inc.*, 2023 U.S. Dist. LEXIS 177597, at *4-5 (E.D.N.Y. Sept. 29, 2023) (quotation marks omitted).  "There is no requirement that a defendant show that a plaintiff acted in bad faith in order to recover costs."  *Id.* at *5 (citation omitted).

Here, as explained above, Plaintiff originally was one of a group of dozens of plaintiffs who filed the Aamer Action, based on the exact same set of facts, and asserting similar claims against four of the five Defendants in this action.  After defendants in the Aamer Action moved to dismiss, the Aamer Action plaintiffs told this Court that they planned to amend their pleading, and

the Court ordered that they amend by February 7, 2025. Instead, in derogation of the Court's order, the Aamer Action plaintiffs filed this action instead, and did not amend their pleading in the Aamer Action. Those tactics caused Defendants to expend unnecessary attorneys' fees and costs. The Court should award attorneys' fees and costs in defending the now-dismissed Aamer Action.[10] The fact that Plaintiff technically filed this action first and subsequently dismissed the Aamer Action should not change the analysis; otherwise any plaintiff could circumvent the rule by merely filing a second action before dismissing the first.

## <u>CONCLUSION</u>

For the foregoing reasons, including that this is Plaintiff's second attempt to establish claims against Defendants, the Court should: (1) dismiss the Complaint in its entirety with prejudice; and (2) order Plaintiff to pay Defendants' reasonable costs and expenses in defending against the Aamer Action.

---

[10]    If the Court grants the instant request, Defendants propose to file a supplemental declaration attaching billing records. *See Rivera* (noting that defendant was allowed to submit billing records as a supplement after Rule 41(d) motion was fully briefed).

Dated: New York, New York
      March 31, 2025

                   MORRISON COHEN LLP

                   By:    _/s/ Jason Gottlieb_
                            Jason Gottlieb
                            Michael Mix
                            Emma McGrath
                            909 Third Avenue
                            New York, New York 10022
                            (212) 735-8600
                            jgottlieb@morrisoncohen.com
                            mmix@morrisoncohen.com
                            emcgrath@morrisoncohen.com

*Attorneys for Defendants Counsel for Defendants Eden Fine Art NY Inc., Cathia Klimovsky, Guy Martinovsky, Gal Yosef, and Cetra Art Corporation*

## **WORD COUNT CERTIFICATION**

Pursuant to Section II.B.2 of the Court's Individual Rules & Practices, the undersigned hereby certifies that this memorandum of law contains 8,724 words. I utilized the word count of the word-processing program used to prepare the document in order to obtain that word count.

_/s/ Jason Gottlieb_
Jason Gottlieb
