UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEKLA BALFOUR-BROWNE, on behalf of himself and all others similarly situated,<br><br>              Plaintiffs,<br><br>    -against-<br><br>EDEN FINE ART NY INC. d/b/a EDEN GALLERY, CATHIA KLIMOVSKY, GUY MARTINOVSKY, GAL YOSEF, and CETRA ART CORPORATION,<br><br>              Defendants. | 25-cv-1142-MMG |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS
EDEN FINE ART NY INC., CATHIA KLIMOVSKY, GUY MARTINOVSKY,
GAL YOSEF, AND CETRA ART CORPORATION'S
<u>MOTION TO DISMISS THE COMPLAINT</u>**

MORRISON COHEN LLP
Jason Gottlieb
Michael Mix
Emma McGrath
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Counsel for Defendants Eden Fine Art NY
Inc., Cathia Klimovsky, Guy Martinovsky,
Gal Yosef, and Cetra Art Corporation*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 2

  I.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT .... 2

      A.   Plaintiff Fails to Sufficiently Allege the Contract's Existence ............................ 2

      B.   Plaintiff Fails to Sufficiently Allege Breach ................................................ 5

      C.   The Statute of Frauds Bars the Contract Claim .......................................... 5

  II.  THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING ............................................. 6

  III. THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF GBL § 349 ........................................................................... 7

      A.   Plaintiff Cannot Invoke GBL § 349 Because He Did Not Enter Into a New York Transaction ............................................................................ 7

      B.   The Complaint Fails to Sufficiently Allege that Plaintiff Saw the Allegedly Deceptive Statements ............................................................. 8

      C.   Plaintiff Has Not Sufficiently Pleaded a Cognizable Injury ........................... 8

      D.   The Complaint Fails to Plead a Deceptive Statement .................................. 8

  IV. THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT ....... 9

  V.  THE TERMS OF SERVICE LIMITATION OF LIABILITY CLAUSE BARS THE CLAIMS AGAINST CETRA AND KLIMOVSKY ........................................... 9

  VI.  THE COURT LACKS PERSONAL JURISDICTION OVER YOSEF ....................... 10

  VII.  THE COURT SHOULD AWARD DEFENDANTS THEIR REASONABLE ATTORNEYS' FEES AND COSTS IN DEFENDING THE AAMER ACTION ........... 11

CONCLUSION ................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barron v. Helbiz Inc.*,
  2023 U.S. Dist. LEXIS 155324 (S.D.N.Y. Aug. 31, 2023)....................................................3, 4

*BYD Co. v. Vice Media LLC*,
  531 F. Supp. 3d 810 (S.D.N.Y. 2021).......................................................................................7

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002)...................................................................................................................5

*McCabe v. ConAgra Foods, Inc.*,
  681 Fed. App'x. 82 (2d Cir. 2017)............................................................................................2

*Moussaoui v. Bank of Beirut*,
  2024 U.S. App. LEXIS 27519 (2d Cir. Oct. 30, 2024)...........................................................10

*Naldo v. Grunberg*,
  80 A.D.3d 1 (1st Dep't 2010) ...................................................................................................6

*Paterno v. Laser Spine Inst.*,
  24 N.Y.3d 370 (2014) .............................................................................................................11

*Quintana v. B. Braun Med., Inc.*,
  2018 U.S. Dist. LEXIS 123718 (S.D.N.Y. July 24, 2018) .......................................................8

*Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon*,
  2014 U.S. Dist. LEXIS 105805 (S.D.N.Y. July 30, 2014) .......................................................6

*Sheldon v. Khanal*,
  396 Fed. App'x 737 (2d Cir. 2010)...........................................................................................5

*Walden v. Fiore*,
  571 U.S. 277 (2014)................................................................................................................10

*Wright v. Publishers Clearing House, Inc.*,
  439 F. Supp. 3d 102 (E.D.N.Y. 2020) ......................................................................................7

**Statutes**

New York General Business Law § 349.............................................................................. *passim*

New York General Obligations Law § 5-701 .............................................................................6

N.Y. U.C.C. § 2-305(1)..............................................................................................................4

**Other Authorities**

N.Y. C.P.L.R. 302.................................................................................................................11

Meta Eagle Club Roadmap, Galyverse, https://galyverse.io/#RoadMap ...................................2, 3

Restatement (Second) of Contracts § 26.................................................................................2, 3

Fed. R. Civ. P. 41(d) ...............................................................................................................2

Defendants[1] respectfully submit this reply in further support of their motion to dismiss (ECF No. 13, the "Motion").

## **PRELIMINARY STATEMENT**

Instead of accepting that he purchased Meta Eagle Club NFTs during the apex of the NFT market, prior to the entire NFT market's decline, Plaintiff is trying to find someone else to blame. But no cognizable legal theory permits Plaintiff to recover against Defendants.

The Moving Brief detailed numerous reasons why the Complaint failed to state a claim against Defendants; Plaintiff's opposition brief (ECF No. 17, the "Opposition" or the "Opp.") fails to rebut any of those arguments. Plaintiff's principal theory is that various public statements promoting the Meta Eagle Club constitute a "contract," but that contention is refuted by longstanding case law that advertisements or promotions are not contracts. There also are insufficient allegations that any of the promotional statements were false.

Plaintiff's GBL § 349 claim should be dismissed because Plaintiff is a non-New York resident and there are no pleaded facts establishing that his "transaction" took place in New York. The Opposition barely mentions the breach of the covenant of good faith and fair dealing and unjust enrichment claims, merely stating in a footnote that they are pleaded in the alternative to contract claims. But the former cannot be pleaded in the alternative to a contract claim, and the latter is duplicative of the GBL § 349 claim and fails for numerous other reasons that Plaintiff does not mention, and thus concedes.

Plaintiff argues that there is specific jurisdiction over Yosef, but alleges no facts connecting Yosef to any unlawful conduct performed in New York.

---

[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in Defendants' Memorandum of Law in Support of the Motion (ECF No. 16, the "Moving Brief" or the "Moving Br.").

Finally, Plaintiff cannot explain why he ignored a Court order and filed this action instead of amending the complaint in the Aamer Action.  The Court should award Defendants their reasonable costs and expenses under Rule 41(d).

<u>**ARGUMENT**</u>

I.    **THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT**

    A.    <u>**Plaintiff Fails to Sufficiently Allege the Contract's Existence**</u>

The Moving Brief explained how various public statements by (some) Defendants concerning the "benefits and perks" of the Meta Eagle Club do not constitute an enforceable contract.  Moving Br. at 8-12.

The Opposition principally focuses on the "Roadmap" set forth "on the Meta Eagle Club website."  Compl. ¶ 47.   But the pleaded statements in the Roadmap are akin to promotion, and the "general rule in New York is that a promotion or advertisement is not an offer."  *McCabe v. ConAgra Foods, Inc.*, 681 Fed. App'x. 82, 84 (2d Cir. 2017); Moving Br. at 10-11.

The Opposition heavily relies on the Restatement (Second) of Contracts § 26, but Plaintiff crucially omits that the Restatement provides that "[a]dvertisements … are not ordinarily intended or understood as offers to sell."  *Id.* § 26 Comment b.  While it is "possible to make an offer by an advertisement directed to the general public, there must ordinarily be some language of <u>commitment or some invitation to take action without further communication</u>."  *Id.* (internal citation omitted, emphasis added).

The Roadmap has no "language of commitment or some invitation to take action without further communication."  *See id.*; Meta Eagle Club Roadmap, Galyverse, https://galyverse.io/#RoadMap.  It contains none of the definitive language of what the purported offeror would do, characteristic of the examples set forth in the Restatement.  *See* Restatement (Second) of Contracts § 26 Illustration 1.  The fact that Meta Eagle Club NFTs are unique and that

there were a limited total amount of Meta Eagle Club NFTs, Opp. at 11, does not transmogrify the forward-looking statements pleaded in the Complaint into the definite offers in the Restatement's illustrations.

Additionally, unlike the hypothetical individuals who saw and acted upon the concrete offers contained in the Restatements' illustrations, here there are also no pleaded facts that Plaintiff himself ever saw the alleged "offers," let alone agreed to them.

The Opposition fails to distinguish *Barron v. Helbiz Inc.*, 2023 U.S. Dist. LEXIS 155324 (S.D.N.Y. Aug. 31, 2023), cited in the Moving Brief.  Moving Br. at 10, 13.  Similar to Plaintiff here, the *Barron* plaintiffs argued that a whitepaper for a cryptocurrency project was a contract. *Id.* at *28.  The *Barron* court dismissed the contract claim and explained that "the Whitepaper does not read as an offer that conveys an intent to be bound.  Rather, it is a marketing material, a sales tactic more akin to a promotion or an advertisement, which in New York are generally not considered to be offers."  *Id.*  "[T]he broad generalizations made in the Whitepaper regarding future performance cannot be read as contractual promises."  *Id.*

Similar to *Barron*, the website containing the Roadmap is plainly promotion; it states that that "Meta Eagle Club members get to enjoy exclusive perks and benefits in the world of luxury and fine art."  Meta Eagle Club Roadmap, Galyverse, https://galyverse.io/#RoadMap.  The "Roadmap 2.0" pleaded in the Complaint is even more forward-looking; it refers to a future reveal of "further details" and states that "[e]xact details will be announced very soon."  Compl. ¶ 58. Just like in *Barron*, the statements about "future performance cannot be read as contractual promises."  2023 U.S. Dist. LEXIS 155324, at *28.  Indeed, the word "Roadmap" plainly connotes futures performance just like a whitepaper.  Even Plaintiff agrees that the Roadmap is functionally the same as a whitepaper – the Opposition explicitly states that "within the digital asset space,

project promoters use 'whitepapers' and 'roadmaps' as the primary methods of outlining what a project can deliver." Opp. at 10 (emphasis added).

If Plaintiff's theory were the law, any business's future-looking statement in marketing materials, business plans, or otherwise could be considered contractual offers for anyone to accept, on a secondary market, for all time. That is not the law, and "[t]o find otherwise would be to hamstring defendants to one business plan, with no room for organic growth or pivots in other directions." *Barron*, 2023 U.S. Dist. LEXIS 155324, at *28.

Plaintiff further argues that Defendants considered the Roadmap a contract because in January 2023, "Defendants reached out to the community for input on whether or not to keep the originally-outlined benefits or to provide some other benefit." Opp. at 12 (citing Compl. ¶¶ 74-75). Plaintiff omits the Complaint's allegation that there was a January 2023 community vote "on whether to reallocate the budget of the remaining items from the Roadmap." Compl. ¶ 74. The fact that the community – not Defendants – voted to reallocate the budget illustrates that the Roadmap was not a firm contract, and more akin to a business plan with "room for organic growth or pivots in other directions." *Barron*, 2023 U.S. Dist. LEXIS 155324, at *28.

The supposed "contract" does not contain any price terms, another contract formation requirement. Moving Br. at 11.[2] The Opposition asserts that "the initial price of the Meta Eagle Club NFTs was set out clearly on the website," Opp. at 13, but this fact is not alleged in the Complaint. Regardless, as set forth in the Moving Brief and not contested by Plaintiff, Plaintiff

---

[2]    Plaintiff cites N.Y. U.C.C. § 2-305(1) for the proposition that "the lack of price term does not mean that there is no contract." Opp. at 13. Even assuming *arguendo* that the U.C.C. applies, the U.C.C. actually says that parties can contract for sale even though the price is not settled if the parties "so intend". There are no allegations that Defendants and Plaintiff intended to agree to a contract without price terms, especially because Plaintiff did not purchase any NFTs directly from Defendants.

purchased all of his NFTs on the secondary market from resellers, not from any Defendant. Moving Br. at 5.

Finally, the Opposition claims that Plaintiff can bring a contract claim against <u>all</u> Defendants, Moving Br. at 12-13, because "the Meta Eagle Club 'Team' was Yosef and Eden Gallery, while Klimovsky and Martinovsky controlled Eden Gallery and Cetra." Opp. at 13. That is not the law. *See Sheldon v. Khanal*, 396 Fed. App'x 737, 740 (2d Cir. 2010) ("plaintiffs failed to state a claim for breach of contract against [defendants where] it is not alleged that they were party to any contract with plaintiffs"); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty"). And Plaintiff has not alleged any facts to justify disregarding the corporate form.

### B.    **Plaintiff Fails to Sufficiently Allege Breach**

The Complaint insufficiently alleges breach because the allegations show that Meta Eagle Club holders <u>did</u> receive benefits until holders took a community vote to "reallocate the budget of the remaining items from the Roadmap" and use "resources" to "focus on … alternative utilities." Moving Br. at 12 (citing Compl. ¶¶ 72-75).

Plaintiff's response is that he "will explore the factual circumstances surrounding this change in priority through discovery." Opp. at 5. But breach is a required element to state a claim for breach of contract, and the pleaded allegations do not establish any breach by any Defendant.

### C.    **The Statute of Frauds Bars the Contract Claim**

Plaintiff's breach of contract claim is barred by the statute of frauds. Moving Br. at 13-14. The Opposition responds by arguing that "[i]n Roadmap 2.0, the various forecasted events would be over by Q3 2022. These staggered deliverables created sequential performance obligations, each independently satisfiable within 12 months." Opp. at 14. Plaintiff mischaracterizes his own

5

Complaint.  Roadmap 2.0, set forth in the Complaint, merely lists when various benefits would begin, including as late as Q4 2022.  Compl. ¶ 58.

Plaintiff cites to Yosef's statement that "…we have a huge plan for the future, for let's say for a full year almost."  Opp. at 14 (citing Compl. ¶ 55).  But Yosef does not say that the supposed benefits would terminate in a year; he said that there were plans going forward for nearly a year. Plaintiff ignores the many pleaded statements regarding "long-term" plans, which could not be terminated within one year without being, if there were a contract, in breach.  Moving Br. at 13-14.

Plaintiff also incorrectly contends that the alleged "agreement" satisfies GOB § 5-701's "in writing" and signature requirement because Defendants allegedly "authenticated" the alleged contract "through electronic writings."  Opp. at 15.  Plaintiff cites *Naldo v. Grunberg*, 80 A.D.3d 1, 12 (1st Dep't 2010), but that case holds that "an electronically memorialized and subscribed contract be given the same legal effect as a contract memorialized and subscribed on paper." Plaintiff's allegations that "Defendants continually referred to the Roadmap in different online writings," Opp. at 15, are different than the email signatures memorializing the agreement in *Naldo*.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiff virtually ignores his breach of the covenant of good faith and fair dealing claim, merely stating in a footnote that it is pleaded "in the alternative as well."  Opp. at 16 n.11.  But "an implied covenant does not offer an alternative remedy to a contract claim; it is embedded in every contract."  *Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon*, 2014 U.S. Dist. LEXIS 105805, at *11-12 (S.D.N.Y. July 30, 2014) (emphasis added).  Plaintiff completely ignores the other reasons set forth in the Moving Brief for why the claim should be dismissed,

Moving Br. at 14-16, and the "failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue," *BYD Co. v. Vice Media LLC*, 531 F. Supp. 3d 810, 819 (S.D.N.Y. 2021) (citations and quotation marks omitted).

## III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF GBL § 349

### A.    Plaintiff Cannot Invoke GBL § 349 Because He Did Not Enter Into a New York Transaction

Plaintiff is a U.K. resident. Because there is no nexus between Plaintiff's transactions and New York, the GBL § 349 claim must be dismissed. Moving Br. at 16-17.

The Opposition contends that Plaintiff can state a GBL § 349 claim because "[t]he OpenSea marketplace is headquartered in New York, New York." Opp. at 16. However, as the Complaint alleges, NFT transactions take place on the blockchain. Compl. ¶¶ 21-26. OpenSea is merely an electronic "marketplace" matching buyers and sellers for blockchain transactions; there are no allegations that the transactions actually took place at OpenSea's physical offices. *See Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110-12 (E.D.N.Y. 2020) (dismissing GBL § 349 claim even though defendants "received payment and processed orders in New York").

The Opposition further argues that Plaintiff can bring a § 349 claim because "the promotion of the Meta Eagle Club took place in New York." Opp. at 17. But none of the pleaded facts have anything to do with Plaintiff's transaction. There are no allegations that Plaintiff saw the alleged promotion, or that any New York promotion was relevant to Plaintiff's purchases. Similarly, the alleged New York residence of certain Defendants is irrelevant under prevailing case law. Moving Br. at 16-17.

**B.      The Complaint Fails to Sufficiently Allege that Plaintiff Saw the Allegedly Deceptive Statements**

Plaintiff does not dispute that a plaintiff must actually see the allegedly deceptive statements to state a GBL § 349 claim.  Moving Br. at 18-19.

The Opposition points to various public statements and surmises, without support, that "[i]t is reasonable to assume that [Plaintiff] and the class was aware of and relied on the misleading statements."  Opp. at 18-19.  But the Complaint contains no <u>facts</u> that Plaintiff actually saw the statements and the "circumstances" thereunder.  *See Quintana v. B. Braun Med., Inc.*, 2018 U.S. Dist. LEXIS 123718, at *28 (S.D.N.Y. July 24, 2018).

**C.      Plaintiff Has Not Sufficiently Pleaded a Cognizable Injury**

Plaintiff does not contest that a GBL § 349 claim must be dismissed where the alleged injury is that the plaintiff would not have purchased the item in question.  Moving Br. at 17-18. Plaintiff points to Defendants' alleged pleaded <u>motive</u>, to inflate the price of the NFTs.  Opp. at 17-18.  But Plaintiff ignores that the alleged injury, as explicitly pleaded in the Complaint is that "[i]f consumers had known the truth concerning the Defendants' deceptive statements consumers would not have purchased the Meta Eagle Club NFTs."  Compl. ¶ 136.  That alleged injury cannot support a GBL claim.

**D.      The Complaint Fails to Plead a Deceptive Statement**

The Moving Brief cited to a litany of disclaimers which defeat Plaintiff's allegations of deception under GBL § 349.  Moving Br. at 19.  Plaintiff cherry-picks certain disclaimers and claims that they "do not absolve Defendants."  Opp. at 19-20.  But Plaintiff ignores the most pertinent disclaimers, including that "[n]o advice or information … obtained by you from us, shall create any warranty … If you choose to rely on such information, you do so solely at your own risk"; "A LACK OF USE OR PUBLIC INTEREST … MAY MATERIALLY ADVERSELY

AFFECT THE PROVISION OF SERVICE AND THE UTILITY OF NFT(S)"; and "YOU ACKNOWLEDGE THAT THE VALUE OF NFT(S) ARE SUBJECT TO VOLATILITY." Moving Br. at 19 (capitalization in original). Those disclaimers clearly state to users that NFT prices were subject to market fluctuations and that they should not rely on extrinsic statements. Accordingly, no user could have been "deceived."

## IV.    THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

The Opposition barely mentions the unjust enrichment claim, except to say that it "is pled in the alternative to the other claims, including the breach of contract claim, and should not be dismissed at this stage." Opp. at 15 n.11. Plaintiff fails to mention, however, that the Moving Brief cited case law dismissing an unjust enrichment claim as duplicative of a GBL § 349 claim, Moving Br. at 21. The doctrine that an unjust enrichment claim can be an alternative to a contract claim is inapplicable to a GBL § 349 claim. Moreover, if the contract claim is sustained (it should not be), the unjust enrichment claim should be dismissed as duplicative.

Plaintiff does not respond to, and thus concedes, the arguments that an unjust enrichment claim cannot stand where an adequate remedy at law exists, and that not all Defendants were enriched at Plaintiff's expense. Moving Br. at 21-22.

## V.    THE TERMS OF SERVICE LIMITATION OF LIABILITY CLAUSE BARS THE CLAIMS AGAINST CETRA AND KLIMOVSKY

The broad limitation of liability clause in the Terms of Service referenced in the Complaint bar claims against Cetra and Klimovsky. Moving Br. at 22-23.

Plaintiff tries to avoid the Terms of Service by arguing that they do not apply to Meta Eagle Club holders. Opp. at 20. But Plaintiff cannot have it both ways – Plaintiff cannot at the same time assert on one hand that a series of disparate public statements at different times in different

mediums constitute a "contract" and assert on the other hand in *ipse dixit* fashion that the actual written Terms of Service referenced in the Complaint are not a contract.

Plaintiff further asserts that the Terms of Service cannot bar all liability. Opp. at 21; *Id*. at n.13. However, the limitation of liability clause is limited to certain subject matters, and only applies to certain potential defendants. Plaintiff also states that it is unfair for Yosef to claim limitation of liability, but this argument is only made on behalf of Cetra and Klimovsky. Moving Br. at 22-23.

## VI.    THE COURT LACKS PERSONAL JURISDICTION OVER YOSEF

The Opposition confirms that Plaintiff only believes that the Court has specific jurisdiction – not general jurisdiction – over Yosef.[3] The Opposition heavily relies on allegations about a party held at a gallery in SoHo, Opp. at 22-23, but Plaintiff makes no allegations of any statements made at the event (which took place after Plaintiff purchased ten of his eleven NFTs) by Yosef or anyone else that were unlawful. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (to satisfy due process, plaintiff must establish "suit-related conduct" that "create[s] a substantial connection" with forum). Plaintiff argues that the SoHo event was an example of the "IRL RNSNC X EDEN worldwide events/shows with artist" mentioned in the Roadmap, Opp. at 23, but this argument only illustrates that the Roadmap was fulfilled, not breached. Further, Yosef's statements about New York, Opp. at 22, are not the same as engaging in suit-related conduct in New York.

---

[3]    The Opposition notes that if the Court does not find specific jurisdiction, that Plaintiff should be allowed to take jurisdictional discovery to determine whether Yosef is subject to general jurisdiction. Opp. at 23 n. 23. But a district court is "well within its discretion in declining to permit discovery where the plaintiff has not made out a *prima facie* case for jurisdiction. Likewise, … when plaintiffs rely on mere speculation or unfounded and speculative accusations, a district court may properly deny their request for jurisdictional discovery. *Moussaoui v. Bank of Beirut*, 2024 U.S. App. LEXIS 27519, at *8 (2d Cir. Oct. 30, 2024) (brackets and quotation marks omitted). Plaintiff pleads no facts that Yosef was ever domiciled in New York, the relevant standard for general jurisdiction. Moving Br. at 23-24.

Similarly, the Opposition guesses that Yosef was in New York (which was not pleaded in the Complaint) when he participated in AMAs and posted messages on X, Opp. at 22, but none of those communications form the alleged misstatements of Plaintiff's claim.

The Opposition states that "Yosef transacts business in New York," suggesting that Plaintiff is invoking CPLR 302(a)(1). But "a non-domiciliary transacts business when on his or her own initiative the non-domiciliary projects himself or herself into this state to engage in a sustained and substantial transaction of business." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014) (quotation marks, brackets, and ellipses omitted). The limited connections with New York articulated in the Opposition, Opp. at 22, do not meet this exacting standard. Moreover, under CPLR 302, "there must be a substantial relationship between the transaction and the claim asserted." *Id.* at 379. There is no relationship between those alleged contacts and the claims.

## VII.    THE COURT SHOULD AWARD DEFENDANTS THEIR REASONABLE ATTORNEYS' FEES AND COSTS IN DEFENDING THE AAMER ACTION

Plaintiff does not dispute that the Aamer Action plaintiffs told this Court that they planned to amend, that the Court ordered that they amend, but Plaintiff filed this new action instead. Moving Br. at 26-27. The Opposition tries to justify Plaintiff's actions by pointing to Plaintiff's prior letter explaining that he filed a new action rather than amend "to mitigate any concern that jurisdiction did not exist at the time of filing of the action." Opp. at 25 (citing ECF No. 4). Plaintiff does not explain how an amended complaint would not have "mitigate[d]" those concerns. Plaintiff also fails to explain why he (as one of the Aamer Action plaintiffs) engaged in actions contrary to what he told the Court. Moving Br. at 26-27.

## <u>CONCLUSION</u>

Defendants respectfully request that the Court grant the Motion.

Dated:  New York, New York
        May 20, 2025

                                        MORRISON COHEN LLP

                                        By:     _/s/ Jason Gottlieb_
                                                   Jason Gottlieb
                                                     Michael Mix
                                                     Emma McGrath
                                                     909 Third Avenue
                                                     New York, New York 10022
                                                     (212) 735-8600
                                                     jgottlieb@morrisoncohen.com
                                                     mmix@morrisoncohen.com
                                                     emcgrath@morrisoncohen.com

                                        *Counsel for Defendants Eden Fine Art NY Inc., Cathia Klimovsky, Guy Martinovsky, Gal Yosef, and Cetra Art Corporation*

12

## **WORD COUNT CERTIFICATION**

Pursuant to Section II.B.2 of the Court's Individual Rules & Practices, the undersigned hereby certifies that this memorandum of law contains 3,496 words.  I utilized the word count of the word-processing program used to prepare the document in order to obtain that word count.

*/s/ Jason Gottlieb*
Jason Gottlieb
