USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/3/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TEKLA BALFOUR-BROWNE,

Plaintiff,

-against-

EDEN FINE ART NY INC. d/b/a EDEN GALLERY, et al.,

Defendants.

25-CV-01142 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff in this lawsuit is Tekla Balfour-Browne, on behalf of a putative class. Defendants are Eden Fine Art NY Inc. ("Eden"), Cathia Klimovsky, Guy Martinovsky, Gal Yosef, and Cetra Art Corporation (together, "Defendants"). As alleged, Defendants touted that purchasers of certain non-fungible tokens ("NFTs") would join a prestigious club offering high-end benefits. Those benefits largely did not accrue. Plaintiff now brings this case alleging breach of contract, and, in the alternative, unjust enrichment and violations of New York's general business law. Before the Court is Defendants' motion to dismiss. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

### I. RELEVANT FACTS[1]

Defendant Gal Yosef is an artist. He partnered with Co-Defendant Eden and its NFT Studio to create NFTs called Meta Eagle Club NFTs ("Eagle NFTs") featuring Yosef's artwork.

[1] The Court primarily sources the facts from the complaint. Dkt. No. 1 ("Compl."). *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) ("In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiffs had knowledge arid relied on in bringing suit.'" (quoting *Brass v. Am.*

Compl. ¶¶ 2–3. In the months leading up to sale of Eagle NFTs, Defendants introduced the concept of the "Meta Eagle Club," a "digital venture" whose members would receive perks like first class tickets to member-exclusive events, hot air balloon rides, and parties both at Eden's galleries and a custom-built "metaverse" space (the "Club"). *Id.* ¶¶ 27, 47. The sole criterion for membership in this exclusive club and access to its many perks was a purchase of one of the Defendants' Eagle NFTs. *Id.* ¶ 4. Plaintiff alleges that the Club, in the promised form, was a sham designed to entice consumers to purchase Defendants' NFTs. *See id.* ¶ 7.

**A. Advertising for the Eagle NFTs and the "Roadmap"**

Advertising for the Club seemingly began around December 23, 2021, through posts by individuals named Yuli Kiseliov and Daniel Nikolaenko on various social media channels including X, Discord, Twitter, Instagram, and the Meta Eagle Club website. *Id.* ¶¶ 35–37, 42–43. Content posted by Kiseliov and Nikolaenko included, for example, posts promising that members could get "hot air balloon rides and first-class plane tickets to exclusive events." *Id.* ¶ 39. Other member perks included "exclusive events in Eden Galleries around the world, Physical art raffles, Flight experiences, Metaverse and of course the Galypoints system," with "Galypoints" referring to a custom currency that Club members could acquire and use to purchase yet more benefits. *Id.* ¶¶ 40, 66.

On December 23, 2021, Kiseliov began touting the "Roadmap" that described some benefits of membership in the Club. *Id.* ¶ 42. These benefits included a custom metaverse, "Helicopter flights," "Hot Air Balloon [rides, and] First Class/Business plane tickets to exclusive events." *Id.* ¶ 42. The same post teased that a "full roadmap and details about the project will be

*Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993))). The Court maintains the original pagination from party filings.

announced soon." *Id.* On January 5, 2022, Kiseliov posted a "Flightpath" on the Meta Eagle Club Discord channel that detailed "stages of development" and their "accompanying benefits." *Id.* ¶ 44. These benefits included "exclusive in-person events/parties with artists, access to artworks and collectibles, plane tickets to future events, a donation of $100,000 towards 'eagle protection foundations,' and raffles for experiences such as helicopter tours, hot air balloon flights, and zero gravity flights." *Id.* ¶ 44. Kiseliov teased an updated roadmap on January 26, 2022, that would go live "next week." *Id.* ¶ 45. That same day, Defendant Yosef posted a video of Club characters on giant video displays in Time Square, captioning the video: "Eagles have landed in Times Square! Meta Eagle Club NFT collection is almost out." *Id.* ¶ 46. The "Roadmap" then appeared on the Club website on January 31, 2022. It promised the following:

> [1] "Donating 100,000 USD for eagles protection"; [2] "Exclusive physical artwork by Gal Yosef"; [3] "Business/First class flight tickets to events"; [4] "IRL RNSNC x EDEN worldwide events/shows with artists"; [5] "Hot air balloon flights"; [6] "Private jet flights to IRL events"; [7] "Meta Eagle NFT Airdrops"; [8] "Helicopter flights"; [9] "Sky diving jumps"; [10] "Exclusive physical artworks and collectibles"; [11] "Custom Meta Eagle Club Metaverse"; [12] "Artist meet up in the Metaverse"; and [13] "Zero G flights."

*Id.* ¶ 47.

**B. Sales of the Eagle NFTs**

Sales of the Eagle NFTs went live on February 7, 2022. *Id.* ¶ 49. Defendants proceeded to sell 12,000 tokens for $13.2 million. *Id.* ¶¶ 49, 51. Consumers used a New York-based marketplace called OpenSea to purchase NFT tokens. *Id.* ¶ 120. As alleged, Plaintiff was one such purchaser and acquired roughly $17,267 worth of Eagle NFTs from February 7, 2022, to April 3, 2022. *Id.* ¶ 11.

**C. Member Benefits and the Club's Subsequent Inactivity**

Most of the Club's promised benefits failed to materialize following the NFT sales. The first Club event occurred on March 15, 2022, at an Eden gallery in New York City. *Id.* ¶ 63.

Defendant Yosef appeared at that event. *See id.* ¶¶ 63–64. Eden posted photos of the event on its website and highlighted that Yosef appeared as part of the "launch [of] his NFT collection," and that the Club's community was distinct because "members will receive exclusive experiences and benefits, including VIP flights around the world and physical artwork." *Id.* ¶ 63. Other photos and descriptions of this event also were posted on the Club's own website. *Id.* ¶ 64. A second live event occurred on March 17, 2022, at Eden's gallery in Maimi, Florida. *Id.* ¶ 65. This was the Club's last event. All told, Defendants offered the following benefits to members: physical art airdrops of eleven physical artworks that Yosef signed, two in-person events, raffles for business-class flight tickets to the Miami event, a raffle for hot air balloon ride tickets, a raffle for helicopter ride tickets, and several collaborations. *Id.* ¶ 72. Plaintiff alleges Defendants then largely abandoned the Club as of March 26, 2023. *Id.* ¶¶ 72–80.

## II. PROCEDURAL HISTORY

Plaintiff filed this lawsuit on February 7, 2025 on behalf of a putative class of NFT purchasers and Club members. He alleges the Club was a ruse designed to entice consumers attracted by the idea of an exclusive club to spend millions on ultimately worthless NFTs. His complaint includes four counts: (1) breach of contract; (2) breach of the implied duty of good faith and fair dealing; (3) violations of Section 349 of the New York General Business Law ("GBL"); and (4) unjust enrichment. *Id*. at 27, 29, 30, 35. Defendants moved to dismiss, arguing Plaintiff has not stated a claim under Rule 12(b)(6). Dkt. No. 13, 16 ("Mot."). Defendants also move to dismiss Yosef for lack of personal jurisdiction under Rule 12(b)(2). *Id.*

## DISCUSSION

Plaintiff has failed to state a claim for breach of contract, violation of the duty of good faith and fair dealing, and unjust enrichment. Accordingly, the motion to dismiss is GRANTED

as to Counts One, Two, and Four. By contrast, Plaintiff has sufficiently stated a claim for violating New York's GBL, so the motion is DENIED as to Count Three. Last, Plaintiff has adequately alleged this Court may exercise personal jurisdiction over Yosef and therefore Defendants' motion to dismiss Yosef is DENIED.

## I. LEGAL STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)..[2] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. The Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

To survive a motion to dismiss under Rule 12(b)(2) a plaintiff must allege facts sufficient "to establish jurisdiction over the defendant." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). A court must "construe the pleadings and any supporting materials in

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

the light most favorable" to the plaintiff, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013), and resolve all doubts in his favor, *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 131 (2d Cir. 2022). The Court may consider materials outside the pleadings when making this assessment. *See Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276 (2d Cir. 2024). However, the Court cannot "draw argumentative inferences in the plaintiff's favor" and need not accept conclusory legal statements. *O'Neill v. Asat Tr. Reg.*, 714 F.3d 659, 673 (2d Cir. 2013).

## II. COUNT ONE FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

Count One alleges breach of contract. Per the complaint, Defendants made an offer to contract by "structuring the Meta Eagle Club as an exclusive club, requiring purchase of a Meta Eagle Club NFT to join the club, and promising specific benefits and perks for membership in that club." Compl. ¶ 98. By purchasing Eagle NFTs, Plaintiff alleges, he accepted the Defendants' offer and formed a contract that obligated Defendants to provide "the promised specific benefits of the Meta Eagle Club to Meta Eagle Club members, as set forth in the Roadmap." *Id.* ¶ 101.

A breach of contract claim requires a valid contract. *Diesel Props. S.r.l v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). To be valid, a contract requires a certain degree of "definiteness" and "certainty." *Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1333–34 (S.D.N.Y. 1982). That requisite "definiteness" and "certainty" is absent where a court is unable to determine what a contract requires or, relatedly, when a party is in breach. *See Foros Advisors LLC v. Digit. Globe, Inc.*, 333 F. Supp. 3d 354, 360 (S.D.N.Y. Sept. 21, 2018). Accordingly, to plead breach of contract, a plaintiff must do more than provide "simple characterization[s] of the nature of the promise." *Fink v. Time Warner Cable*, 810 F. Supp. 2d

633, 645 (S.D.N.Y. 2011). Instead, she must "provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." *Nuevos Aires Shows LLC v. Bühler*, No. 19-CV-01822 (NRB), 2020 WL 1903995, at *4 (S.D.N.Y. Apr. 17, 2020).

The Complaint runs afoul of that principle. Plaintiff's description of the contract—purchase of tokens for club membership benefits—provides only "simple characterizations of the nature of the promise" that fall short of the requisite certainty and definiteness to allege a binding contract. *Id.*; *see also Pittman v. Chick-Fil-A, Inc.*, 21-CV-08041 (VM), 2022 WL 2967586, at *6 (S.D.N.Y. July 27, 2022) (explaining that a "simple characterization of the nature of the promise," is insufficient to allege a breach of contract). Nor can Plaintiff point to the Roadmap as establishing Defendants' contractual obligations given the Roadmap is largely a randomized exemplar grouping of potential future benefits such as "Zero G Flights," "Hot air balloon [rides]," and "Business class tickets to events" which is too vague to establish a binding commitment by Defendants. *See McCabe v. Caribbean Cruise Line*, No. 13-CV-06131, 2014 WL 3014874, at *5 (E.D.N.Y. July 3, 2014) (explaining that a pre-recorded telephone call promising a "free cruise" for completing a survey was "simply too vague and indefinite to plausibly establish the existence of a contract"). Furthermore, there is no feasible mechanism for the Court to determine Defendants' obligations under the contract or define a breach. *Foros Advisors LLC*, 333 F. Supp. 3d at 360 ("[I]f the terms of the agreement are so vague and indefinite there is no basis or standard for deciding whether the agreement had been kept or broken, or to fashion a remedy, and no means by which such terms may be made certain, then there is no enforceable contract." (quoting *Candid Prods., Inc.*, 530 F. Supp. at 1333). For example, did the purported contract personally entitle Plaintiff to private jet travel to a concert?

Were the tickets to the concert included, or just the transportation? Would Defendants breach the contract by failing to provide Zero G flights to each purchaser of Eagle NFTs? Reference to the Roadmap, other extraneous documents, or social media posts cannot answer these questions. Accordingly, there is no binding or legally enforceable contract between the parties, and Defendants' motion to dismiss is granted as to Count One.

## III. COUNT TWO FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

Count Two alleges Defendants breached the implied duty of good faith and fair dealing. Compl. at 29. This claim "requires a contractual obligation between the parties." *Duration Mun. Fund, L.P. v. J.P. Morgan Sec., Inc.*, 908 N.Y.S.2d 684, 685 (1st Dep't 2010). No such contractual obligation exists. *See supra* Pt. II. It follows that Count Two must also be dismissed. *See Liu Jo S.P.A. v. Jenner*, 630 F. Supp. 3d 501, 518 (S.D.N.Y. 2022) (dismissing a claim of breach of the implied covenant of good faith when there is no contractual obligation between the parties).

## IV. COUNT THREE STATES A CLAIM FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW SECTION 349

Count Three alleges Defendants violated Section 349 of New York's GBL by making false and deceptive statements about Club membership that inflated the value of Eagle NFTs. Compl. ¶ 118. Section 349 prohibits "deceptive . . . acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a). To state a Section 349 claim, a plaintiff must allege (1) a consumer-oriented transaction; (2) deceptive or materially misleading acts or practices by defendant; and (3) that those acts or practices caused an injury to plaintiff. *Nourieli v. Lemonis*, No. 20-CV-08233 (JPO), 2021 WL 3475624, at *6 (S.D.N.Y. Aug. 6, 2021).

Defendants levy several challenges to Plaintiff's GBL claim. None withstand scrutiny at this stage of the case.

Defendants first argue Plaintiff has not alleged a deceptive transaction in New York. Mot. at 16–17. Section 349 includes limiting language requiring conduct "in this state" of New York. N.Y. Gen. Bus. Law § 349(a). The New York Court of Appeals and Second Circuit have clarified this requirement is satisfied if some part of an underlying transaction in which a consumer is deceived occurred in New York. *See Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (2002); *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 124 (2d Cir. 2013). In *Cruz*, the Second Circuit determined that part of an underlying transaction occurred in New York because consumers paid a defendant in New York, customer communications went to New York, and customer agreements specified that New York law would govern disputes between customers and defendants. 720 F.3d at 123–24.

Drawing all inferences in Plaintiff's favor, Plaintiff has adequately alleged a New York-based transaction. Purchasing the NFTs required Plaintiff and other consumers to transact through, and send money to, OpenSea, which is a New York-based marketplace. *See id.* at 123 (highlighting the payment of funds to an entity in New York); *see also Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 633–34 (S.D.N.Y. 2016) (emphasizing the location where payments are processed in determining that a transaction occurred in New York). Plaintiff also alleges that deceptive advertisements emanated from New York promising the benefits of membership in a Club that Defendants, as alleged, did not intend to provide. *See Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 167–68 (S.D.N.Y. 2014) (finding New York-based transactions where communications from defendants came from a New York address).

Therefore, Plaintiff has alleged that at least part of the underlying deceptive transaction occurred in New York.

Next, Defendants argue Plaintiff has not alleged a cognizable injury under Section 349. Mot. at 17–18. Not so. Plaintiff alleges that consumers paid a higher price for the Eagle NFTs based on Defendants' misrepresentations that the tokens would also give them membership in an exclusive club with a variety of perks. Compl. ¶ 2 (describing promises that "the Meta Eagle Club would be great and that members would enjoy exclusive benefits"); ¶ 7 ("Defendants made deceptive statements designed to induce Plaintiff and the Class to purchase Meta Eagle Club NFTs in the Mint, and to prop the value of Meta Eagle Club NFTs up after the Mint"); ¶ 134 ("Defendants were motivated to make false statements to inflate the price of Meta Eagle Club NFTs in order to raise capital for themselves and to profit off the embedded royalty mechanism where they received a 10% royalty on each resale of the Meta Eagle Club NFTs on secondary markets."). Numerous decisions have recognized that a "price premium" for a unique feature that turns out not to exist is a cognizable injury under Section 349. *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (collecting cases); *Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 310 n.6 (S.D.N.Y. 2021). Defendants offer no reason to distinguish this case from these decisions.

Defendants next argue that Plaintiff never alleged that he viewed the misleading statements, therefore cannot show that any deceptive act caused his injury. Mot. at 18–19. "To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased." *Goldemberg v. Johnson & Johnson Consumer Cos.,* 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014). Drawing all inferences in Plaintiff's favor, however, he has properly alleged exposure to the misleading material. The complaint assiduously chronicles the social media posts, website

postings, and interviews in which Plaintiff contends Defendants made misleading statements. *See, e.g.*, Compl. ¶¶ 41–49, 55–58, 61–62. The complaint also specifically alleges that "Defendants told the world that they were going to start a private, members-only club" and that "Defendants made deceptive statements designed to induce Plaintiff." Compl. ¶¶ 2, 7. Putting these allegations together, the natural inference is that Plaintiff was exposed to at least some of the conduct described in the complaint. *See Goldemberg*, 8 F. Supp. 3d at 480 (noting the plaintiff's detailed allegations and statement of harm and concluding that, at the motion to dismiss stage, this allowed the court to make a reasonable inference of exposure); *see also Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014) (same).

Finally, Defendants argue that the complaint fails to plead deceptive statements because there was a disclaimer in the terms of service. Mot. at 19–20. The Court may not consider this argument given Plaintiff alleges that "[p]urchasers of the Meta Eagle Club NFTs did not have to read, acknowledge, or consent to these terms prior to purchasing the NFTS." Compl. at 5 n.2; *see Barron v. Helbiz, Inc.*, No. 21-00278, 2021 WL 4519887, at *4 (2d Cir. Oct. 4, 2021) (reversing a district court's ruling that considered the terms and services of a cryptocurrency purchase because, *inter alia*, a plaintiff "was never asked to consent to the Terms and Conditions when purchasing" the cryptocurrency). The Complaint sufficiently states a claim under Section 349 of the GBL at the pleading stage and accordingly Defendants' motion to dismiss Count Three is DENIED.

## V. COUNT FOUR FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

Count Four alleges unjust enrichment. Plaintiff argues that Defendants received money and it would be inequitable to let them retain that money given "their breaches of contract, breach of the duty of good faith and fair dealing, or deceptive acts and practices." Compl. ¶ 144.

Defendants move to dismiss arguing, *inter alia*, the claim is duplicative of Plaintiff's other claims. Mot. at 20–21. Plaintiff's opposition brief devotes one sentence in a footnote to defending Count Four: "Plaintiff's claim for unjust enrichment is pled in the alternative to the other claims, including the breach of contract claim, and should not be dismissed at this stage." Dkt. No. 17 at 15 n.11.

Prevailing on a claim of unjust enrichment in New York requires a plaintiff to allege "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001). A claim for unjust enrichment "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*, 441 F. Supp. 3d 1, 6 (S.D.N.Y. 2020). "[C]ourts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims." *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) (collecting cases).

Plaintiff's unjust enrichment claim is entirely duplicative of the Complaint's other claims, relying on "the same factual allegations and the same theory of liability." *Id.* at 249. Indeed, the Complaint expressly articulates this problem, stating that it would be inequitable to let Defendants retain the proceeds they acquired through "their breaches of contract, breach of the duty of good faith and fair dealing, or deceptive acts and practices in connection with the offer and sale of Meta Eagle Club NFTs," Compl. ¶ 144, *i.e.*, Counts One through Three of the Complaint. Plaintiff's opposition brief also does nothing to counter Defendants' argument that, regardless of whether Plaintiff pleads unjust enrichment in the alternative, the claim fails as duplicative. *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) ("[A] court may . .

. infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)). As Plaintiff's unjust enrichment claim is entirely duplicative of his other claims, Defendants' motion to dismiss Count Four is GRANTED.

## VI. THE MOTION TO DISMISS YOSEF FOR LACK OF PERSONAL JURISDICTION IS DENIED

Last, Defendants move to dismiss Yosef for lack of personal jurisdiction. "On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider all pleadings and accompanying affidavits and declarations, while still resolving all doubts in plaintiff's favor." *Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 404 n.1 (S.D.N.Y. 2017). The exercise of personal jurisdiction is proper if it (1) complies with "a state-law statutory basis" and (2) comports with due process. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). New York's Civil Practice Law and Rules § 302(a)(1) permits a court to exercise personal jurisdiction over a person who transacts any business within the state so long as the claim asserted arises from that business activity. N.Y. C.P.L.R. § 302(a)(1); *Sole Resort, S.A. de C.V. v. Vallures Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). "[T]he touchstone for jurisdiction under New York's long-arm statute is the intent to reach the forum." *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 640 (2d Cir. 2023). The Due Process Clause, meanwhile, requires that a "defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Licci ex rel. Licci*, 732 F.3d at 170. "The contacts must be the defendant's own choice and not random, isolated, or fortuitous." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). Additionally, the plaintiff's claim "must arise out of or relate to the defendant's contacts with the forum." *Id.*

Exercising personal jurisdiction over Yosef comports with both New York's long-arm statute and the Due Process Clause. Per his declaration, Yosef "arrived in New York in January 2022" and "stayed there [a] few months." Dkt. No. 14 ¶ 6. Yosef promoted the Club and its NFTs throughout his time in New York. He recorded and posted a video on January 26, 2022, showing Club characters on giant video displays in Times Square with the caption, "Eagles have landed in Times Square! Meta Eagle Club NFT collection is almost out, stay tuned!" Compl. ¶ 46. He then appeared at a Q&A on February 18, 2022, again while in New York, promoting the Club and teasing its "huge plan for the future" and its capacity "to build a long-term relation" with members. *Id.* ¶¶ 54–56. And Yosef appeared at an in-person Club event in New York on March 15, 2022, which was then promoted on both Eden and the Club's websites, and which Plaintiff alleges was part of Defendants' scheme of creating the image of an exclusive community in order to drive Eagle NFT sales. *Id.* ¶¶ 38–41, 63–64.

The foregoing is more than sufficient to establish personal jurisdiction. All the above are instances of the alleged deceptive conduct animating Plaintiff's GBL claim, and all occurred in New York, satisfying the requirements for New York's long-arm statute.[3] Exercising personal jurisdiction also comports with due process. Yosef purposefully directed certain of his activities at the forum of New York, and this litigation arises, at least in part, out of those activities. Furthermore, Yosef cannot feign surprise at being haled into court in New York, where he resided for several months during the conduct at issue in this litigation and where he took several

[3] *See In re Steinmetz*, No. 20-MC-00212 (AJN), 2022 WL 170851, at *4 (S.D.N.Y. Jan. 19, 2022) (finding specific jurisdiction because defendants conducted a series of meetings in New York concerning mining rights which were at the core of subsequent litigation); *Al Thani v. Hanke*, No. 20-CV-04765 (JPC), 2021 WL 1895033, at *6 (S.D.N.Y. May 11, 2021) (finding specific jurisdiction as defendants traveled to New York multiple times to negotiate and execute contracts); *People v. JUUL Labs, Inc.*, 212 A.D.3d 414, 415 (1st Dep't 2023) (concluding the court had specific jurisdiction in consumer fraud action because defendants traveled to New York for meetings and launch parties).

active steps (involving his physical presence) to promote the sale of Eagle NFTs that are integral to this lawsuit.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 13) is GRANTED IN PART and DENIED IN PART. Specifically, Counts One, Two, and Four are dismissed, Count Three is not dismissed, and personal jurisdiction over Defendant Yosef is proper.

Dated: September 3, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge