UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TEKLA BALFOUR-BROWNE, on behalf of himself and all others similarly situated,

Plaintiff,

-against-

EDEN FINE ART NY INC. d/b/a EDEN GALLERY, CATHIA KLIMOVSKY, GUY MARTINOVSKY, GAL YOSEF, and CETRA ART CORPORATION,

Defendants.

25-cv-1142-MMG

**PROTOCOL FOR THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

Plaintiff Tekla Balfour-Browne ("Plaintiff"), individually and on behalf of the putative class, and Defendants Eden Fine Art NY Inc. d/b/a Eden Gallery, Cathia Klimovsky, Guy Martinovsky, Gal Yosef, and Cetra Art Corporation (collectively, "Defendants") (each individually, a "Party" and collectively, the "Parties"), through undersigned counsel, have stipulated and agreed, pursuant to Federal Rules of Civil Procedure 16, 26, and 34 and Federal Rule of Evidence 502, that the following specifications set forth in this Stipulation Governing the Production of Electronically Stored Information (the "ESI Protocol") shall govern the production of all electronically stored information ("ESI") and any other materials and information produced by the Parties in discovery in the above-captioned action (the "Action"), consistent with the Civil Case Management Plan and Scheduling Order entered on October 23, 2026 (ECF No. 33).

## I. <u>DEFINITIONS</u>

"Document" shall have the same meaning and scope as it has in the Parties' discovery requests (including the Parties' Requests for Production and Interrogatories), unless otherwise modified within this ESI Protocol, and shall also be construed to encompass "Communications"

as defined in the Parties' discovery requests. Documents that are electronically stored are a form of ESI.

"ESI" is an acronym for "electronically stored information" and, as used in this ESI Protocol, shall be construed to include "Documents" and "Communications," as both of those terms are defined in the Parties' discovery requests, to the extent that such Documents and Communications are electronically stored.

"Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such computer or information technology system. Metadata is a type of ESI.

"Native File" and "Native Format" mean ESI in the electronic format of the application in which such ESI is created, viewed, and/or modified in the ordinary course of business. A Native File is a type of ESI.

"Third Party" means any person or entity served with a subpoena in connection with this Action. This ESI Protocol shall govern Document productions by the Parties and their affiliates. To the extent practicable, Third Parties producing Documents in connection with this Action should comply with the specifications set forth in this ESI Protocol.

"Producing Party" means any Party or Third Party that produces Documents and/or ESI under this ESI Protocol (or is subject to a request for production).

"Receiving Party" means any Party or Third Party that receives Documents and/or ESI produced in this action.

"Requesting Party" means any Party that serves a request for production of Documents and/or ESI on another Party or Third Party.

"Protective Order" means the stipulated protective order governing the production and exchange of confidential information that the Parties will submit to the Court for entry in this Action, or any other protective order entered by the Court in this Action.

## II. GENERAL PROTOCOLS

Except as specifically limited herein, this ESI Protocol governs the production of discoverable Documents by the Parties and Third Parties in this Action. This ESI Protocol is intended to streamline production and promote a just, speedy, and inexpensive determination of this Action. The terms of this ESI Protocol shall be construed to ensure the prompt, efficient, and cost-effective exchange of ESI consistent with the Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Civil Rules"), the Individual Rules & Practices of the Honorable Margaret M. Garnett (the "Individual Rules"), and any other applicable law, rules, and/or Orders issued by this Court. The Parties shall take reasonable steps to comply with the procedures set forth in this ESI Protocol.

Subject to the Protective Order, all Documents and/or ESI that are responsive to discovery requests and not designated as privileged shall be produced in the manner provided herein. For the avoidance of doubt, nothing in this ESI Protocol shall be interpreted to require disclosure of Documents and/or ESI that are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege. Additionally, nothing in this ESI Protocol shall be deemed to waive or limit any Party's right to object to the production of certain Documents and/or ESI, or to move for an appropriate order under applicable laws, rules, and/or orders issued by this Court that an information source is not reasonably accessible because of proportionality, undue burden, or cost.

The Parties will attempt to resolve disputes regarding the protocols set forth herein in good faith, including by conferring at least once in person, by videoconference, or by telephone, before filing an application with the Court or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek the Court's intervention in accordance with Local Civil Rule 37.2 and Rule II.A.6 of the Individual Rules.

## III. IDENTIFICATION AND COLLECTION OF DOCUMENTS

. The Parties agree to meet and confer in good faith regarding custodians, Data Sources, search terms, date ranges, and other reasonable search methodologies as discovery progresses. Nothing in this ESI Protocol limits a Producing Party's obligation to fully respond to a Requesting Party's discovery requests (subject to the Producing Party's responses and objections and any applicable agreements between the Parties, and any applicable law, rules, and/or Orders issued by the Court).

The Parties agree that the potential Data Sources shall generally include laptops, computers, shared network servers, mobile phones, shared or individual network folders, e-mail accounts, cloud storage systems, and structured data systems (including accounting and financial systems) that are owned or maintained by the Parties and used for the purposes of conducting the Parties' business, to the extent separate devices exist.

Because the Parties anticipate that discovery may implicate multiple electronic devices and online accounts, the Parties shall meet and confer regarding whether and to what extent ESI, including text and instant messages from messaging apps, shall be collected from mobile phones, tablets, or personal devices or accounts used by any individual Party or custodian. Absent such agreement, a showing of particularized need, or good cause, the Parties shall not be required to collect ESI from backups associated primarily with such devices.

Foreign Data. The Parties acknowledge that certain Parties, custodians, and Data Sources may be located outside the United States. To the extent a Producing Party contends that foreign data protection, privacy, or blocking laws restrict the collection, review, transfer, or production of responsive ESI, the Producing Party shall promptly notify the Requesting Party, identify the applicable law and the categories of ESI affected, and meet and confer regarding appropriate measures (such as redaction, anonymization, or designation under the Protective Order). Such laws shall not, by themselves, be a basis to withhold responsive, non-privileged ESI absent agreement of the Parties or order of the Court.

The Parties agree that Documents and/or ESI are not necessarily responsive to any propounded discovery request or otherwise relevant to this Action merely because they are hit on or captured by the application of any negotiated search terms.

The Parties recognize that there exist a variety of search tools and methodologies, including but not limited to the use of search terms, filters, and technology assisted review ("TAR"). Nothing in this ESI Protocol prevents the Parties from using other tools and techniques to improve the efficacy of review. The fact that Documents and/or ESI are identified as responsive by any technology used to identify potentially responsive Documents and ESI shall not prevent any Party from withholding such Document or ESI from production based on that Party's good faith determination that the Document or ESI is not responsive or that it is protected from disclosure by applicable privilege or work-product protection.

The Parties agree to meet and confer in good faith to address any issues that may arise in conjunction with the usage of search tools and/or methodologies to identify, collect, and/or produce documents in this action. All Parties expressly reserve all rights to interpose an

application to the Court regarding discovery and the identification, collection, and/or production of Documents and/or ESI in this action.

Production of responsive, non-privileged Documents shall be completed on a rolling basis.

## IV. USE OF AI

The Parties have not reached agreement concerning the use of AI in discovery. The Parties agree to meet and confer regarding AI-related issues and may address such issues in a separate ESI stipulation or addendum. Until such time, each Party expressly reserves all rights concerning the use of AI in connection with discovery and ESI.

## V. PRODUCTION FORMAT

### A. ELECTRONICALLY STORED INFORMATION

ESI should be produced as a single-page, Group IV, 300 DPI TIFF images, except that source code, audio, video, presentations (including but not limited to PowerPoint files), and spreadsheet-type files (including but not limited to Microsoft Excel and CSV files) should be produced in Native Format. All ESI should be produced with a delimited, database load file that contains the Metadata fields substantially similar to those listed in **Exhibit 1**, attached hereto. To the extent that Metadata does not exist, is not reasonably accessible or available for any documents produced, or would be burdensome to provide, nothing in this ESI Protocol shall require any Party to extract, capture, collect or produce such data. The Parties reserve the right to request the production of any Metadata fields listed in Exhibit 1 that are not provided by a Producing Party, and agree to meet and confer regarding such requests. An .opt image cross-reference file should be provided for all TIFF images.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the ESI. For example, TIFF images of e-mail messages should include the BCC line. Color originals may be produced in black and white TIFF format,

but either party may request, by bates number(s), a replacement set of specific color images. Categorical or wholesale replacement requests are deemed invalid.

The Parties agree that they will produce the following types of ESI shall be produced as Native Files:

i. Excel spreadsheets

ii. Audio/video files

iii. Presentations (PowerPoint, Keynote, etc.)

Native Files shall be produced in Native Format and with a single-page, bates-stamped TIFF image slip-sheet containing the confidentiality designation and text stating the document has been produced in Native Format. If Native Files require redactions for privilege, the Parties shall meet and confer regarding how to implement privilege redactions while ensuring that proper formatting and usability are maintained. Each Native File should be named according to the bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK (or similar) field. If either Party believes that Native Files should be produced for a specific Document or class of Documents not required to be produced in Native Format under this paragraph, or if records do not easily conform to native or TIFF format (i.e., structured data), the Parties should meet and confer in good faith regarding the need to produce such Native Files.

**B. STRUCTURED DATA**

To the extent a response to a non-objectionable discovery request requires production of discoverable ESI in a database, the parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.

## VI. <u>PROCESSING AND OTHER SPECIFICATIONS</u>

Bates Numbering and Confidentiality Designations: Each page of a produced image shall have a legible bates number that includes an alpha prefix with a fixed number, i.e., ABC000001, electronically "burned" onto the image. Each image page or Native File shall be assigned a bates number that: (1) is unique across the entire production; (2) maintains a constant length across the entire production; (3) contains no special characters or embedded spaces; (4) is sequential within a given Document; (5) does not obscure any part of the underlying image; and (6) is oriented, to the extent possible, in the same manner as the majority of the text on the page. No other legend or stamp will be placed on the Document image other than confidentiality legends (where applicable) or privilege redactions.

ESI Date and Time Processing: Each Party's ESI should be processed using a consistent time zone for all data. If possible, the Parties shall process their ESI using UTC Time. The Producing Party shall share the time zone selected for processing of its data with the other Parties. Blockchain transaction data shall be produced with its native timestamps (typically Coordinated Universal Time (UTC)), and the Producing Party shall identify the time zone of any such timestamps.

Global Deduplication: Removal of duplicate Documents should only be done for exact duplicates (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, Metadata identifying all custodians in possession of each document removed as a duplicate must be provided in the CUSTODIAN Metadata field. Hard Copy Materials shall not be eliminated as duplicates of responsive ESI.

Email Thread Suppression: A Producing Party may, but is not required to, de-duplicate e-mails to eliminate earlier or incomplete chains of emails and produce only the most inclusive

iteration of an email chain. However, any lower included emails that have attachments (if responsive) and any responsive email that includes unique content not included elsewhere in a produced email string must be produced. Following production of most inclusive email threads, and for good cause shown, a Requesting Party may make reasonable requests, with respect to specifically identified most-inclusive email threads, for Metadata associated with individual, prior or lesser-included emails within the identified most inclusive email threads. The Producing Party shall cooperate reasonably in responding to any such requests.

Embedded Objects: Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access, and .PDF. Subject to claims of privilege and/or other immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided in this ESI Protocol.

Compressed Files: Compressed file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a .zip within a .zip is decompressed into the lowest possible compression resulting in individual files.

No Designation of Discovery Requests: Production of hard copy Documents and ESI in the reasonably usable form set out in this ESI Protocol need not include reference to the discovery requests to which a Document or ESI may be responsive.

Families: Document families, including emails and attachments, embedded files, and other parent-child relationships, should be produced together. Child documents should immediately follow their parent documents in bates-number order. All members of a document family should share the same family identifier reflected in the PRODBEGATT field.

Modern Attachments and Hyperlinked Files: For purposes of production, "modern attachments" include files referenced or shared through cloud-based links or pointers in email, messaging, or collaboration platforms rather than transmitted as conventional file attachments. Where reasonably accessible through the collection method, responsive modern attachments should be collected and produced in a manner that preserves the relationship between the communication and the linked file. The parties should meet and confer as necessary regarding document versions, version history, inaccessible or permission-restricted links, externally hosted content, and appropriate metadata. A hyperlink appearing in a communication does not, by itself, establish a family relationship.

Mobile, Messaging, and Collaboration Data: SMS, MMS, iMessage, WhatsApp, Signal, Telegram, Microsoft Teams, Slack, Google Chat, and similar communications should be produced in a reasonably usable format that preserves sufficient conversational context. Messages may be produced as complete conversation, daily conversation blocks, or another reasonable grouping appropriate to the source data. Sufficient preceding and subsequent messages should be included where necessary to understand the responsive communications.

Redactions: The Parties may apply redactions to protect attorney-client privilege; attorney work product; joint privilege; spousal privilege; information prohibited from disclosure by federal, state, or foreign statutes or regulations; medical information concerning any individual; and personal identity information. The Parties disagree as to whether relevance redactions should be permitted and reserve all rights with respect to that issue.

To the extent a Party is required to withhold from production a member (email or attachment) of an email family on the basis of privilege including work production protection, where some or all of the other email family members are being produced, the producing Party shall

provide a Bates numbered placeholder TIFF image bearing the legend, "DOCUMENT WITHHELD FOR PRIVILEGE."

Redactions will be clearly signified by including the word "Redacted" on the document or image along with a brief description of the reason for redaction (i.e., "Redacted – Privileged"). For redacted documents, a text file shall be created using OCR and shall be produced in lieu of extracted text. The searchable text file will include the word "Redacted."

Proprietary Software: To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the Parties shall meet and confer to minimize any expense or burden associated with the production of the ESI while still allowing for efficient and effective review by the Requesting Party.

## VII. HARD COPY DOCUMENTS

Unless otherwise agreed in writing by the Receiving Party, Documents not maintained in electronic form shall be electronically scanned and produced with Bates numbers and confidentiality designations in Group IV TIFF format at not less than 300 dpi resolution with *.tif file extension and accompanied by image load files with *.lfp and *.opt file extensions that contain document boundaries, a data load file with *.dat file extension that contains fielded information and Metadata substantially similar to those identified in Exhibit 1 (to the extent possible), and document-level associated optical character recognition ("OCR") text files with *.txt file extension. In scanning paper documents, distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records (i.e., paper documents should be logically unitized). The Parties will use reasonable efforts to have their vendors unitize Documents correctly and agree to meet and confer to address situations where there are improperly unitized documents.

At the discretion of the Producing Party, Documents may be produced as black and white TIFF images; however, individual Documents shall be produced as TIFF images preserving colors in the original document upon the reasonable request of a Receiving Party. The Parties agree to use reasonable, good faith judgment in determining whether to produce Documents as black and white or color images so as to limit the requests for reproduction of black and white images in color. If a Producing Party makes its hard copy Documents available for inspection, the Receiving Party has the option of requesting a color copy of a particular document (to the extent such color copy exists).

Reasonable efforts shall be used to scan the Documents at or near their original size, so that the print or image on the document appears straight, and not skewed. Image size may be reduced as necessary to display production numbers and confidentiality designations without obscuring text.

Reasonable efforts shall be used to capture the box, file folder, and other labeling information for the documents as they are kept in the ordinary course of business. Any handwritten notes, sticky tabs, and/or tabs shall also be scanned and provided in electronic format.

## VIII. PRESERVATION

The Parties agree to negotiate in good faith regarding requests for production of documents to ensure discovery is relevant to any Party’s claim or defense and proportional to the needs of the case. The Parties agree that the following ESI is not reasonably accessible:

i. Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are

routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy.

ii. Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics and "unallocated" space on hard drives, provided that no Party or agent of a Party deleted, removed, or damaged the integrity of such data to prevent its discovery.

iii. Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that is difficult to preserve without disabling operating systems.

iv. On-line access data such as temporary internet files, history, cache files, cookies, and the like, wherever located.

v. Data stored on photocopiers, scanners and fax machines.

vi. Data in Metadata fields that are frequently updated automatically, such as last-opened dates.

vii. Legacy data or data remaining from systems no longer in use that are unintelligible on systems in use.

viii. Any electronic file which matches the Reference Data Set published by the National Institute of Standards and Technology's National Software Reference Library.

## IX. PRIVILEGE AND PRIVILEGE LOGS

The Parties will provide Privilege Logs no later than fourteen (14) days following the date of substantial completion.

Privileged communications between a Party and its litigation counsel in this Action, and work product of such counsel, created on or after October 9, 2024 (the date the complaint in the *Aamer* Action was filed), need not be logged.

If the Requesting Party requires further information, it shall explain in writing the need for such information and identify, by bates number or other unique identifier, each Document for which it seeks this information. Within fourteen (14) days of such a request, the Producing Party must either provide the requested information or challenge the request. If the Producing Party challenges a request, the Parties shall meet and confer to seek a mutually agreeable solution before seeking relief from the Court.

Federal Rule of Evidence 502(d). Pursuant to Federal Rule of Evidence 502(d), the production of privileged or work-product-protected Documents or ESI, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this Action or in any other federal or state proceeding. Upon written notice from a Producing Party identifying such material, the Receiving Party shall promptly return, sequester, or destroy the material and any copies, and shall not use or disclose it until any dispute regarding the claim is resolved. This paragraph shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

## X. NO EFFECT ON RELEVANCE, DISCOVERABILITY, OR ADMISSIBILITY

This ESI Protocol does not address, limit, or determine the relevance, discoverability, or admissibility of Documents or ESI. By stipulating to this ESI Protocol, the Parties do not waive the right to seek any discovery, and the Parties do not waive any objections to any discovery requests. All objections to the admissibility of any Document or ESI are preserved.

## XI. CONFIDENTIALITY

Nothing in this ESI Protocol shall be deemed to limit, modify, or override any provisions of the forthcoming Protective Order.

## XII. MODIFICATION

This ESI Protocol may be modified by an amendment upon the agreement of the Parties or by the Court for good cause shown.

**SO STIPULATED AND AGREED:**
Dated: November 23, 2026

WOLF POPPER LLP
By: */s/ Matthew Insley-Pruitt*
Chet B. Waldman
cwaldman@wolfpopper.com
Joshua W. Ruthizer
jruthizer@wolfpopper.com
Matthew Insley-Pruitt
minsley-pruitt@wolfpopper.com
Justyn Millamena
jmillamena@wolfpopper.com
845 Third Avenue, 12th Floor
New York, NY 10022
Tel: (212) 759-4600
Fax: (212) 486-2093

BURWICK LAW, PLLC
By: */s/ Rylan Maksoud*
Max Burwick
Rylan Maksoud
43 West 43rd Street, Suite 114
New York, New York 10036
Tel. (646) 762-1080
max@burwick.law
rylan.maksoud@burwick.law

*Counsel for Plaintiff and the Proposed Class*

MORRISON COHEN LLP
By: */s/ Michael Mix*
Jason Gottlieb
Michael Mix
Emma McGrath
909 Third Avenue
New York, New York 10022
Tel. (212) 735-8837
jgottlieb@morrisoncohen.com
mmix@morrisoncohen.com
emcgrath@morrisoncohen.com

*Counsel for Defendants*

SO ORDERED. Dated November 24, 2026.

HON. MARGARET M. GARNETT
UNITED STATES DISTRICT JUDGE

**EXHIBIT 1**

| Field Name | Example/Format | Description |
|---|---|---|
| BEGBATES | ABC00000001 (Unique ID) | The Document ID Number associated with the first page of the document. |
| ENDBATES | ABC00000003 (Unique ID) | The Document ID Number associated with the last page of the document. |
| BEGATTACH | ABC00000001 (Unique ID Parent-Child Relationships) | The Document ID Number associated with the first page of the parent document. |
| ENDATTACH | ABC00000008 (Unique ID Parent-Child Relationships) | The Document ID Number associated with the last page of the last attachment. |
| PAGES | 3 (Numeric) | The number of pages for a Document. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| RECORDTYPE | Options: e-mail, attachment, hard copy, loose e-file | The record type of a Document. |
| FAMILY DATE | MM/DD/YYYY | The date that the parent document was created.<br><br>*Parties acknowledge that the FAMILY DATE field may not actually reflect the date the Document was created, due to the ease of change to that field and the technical definition of the field (*e.g.*, the created date and time reflects the date when the Document was created in that particular location on the computer or on the other storage device location). |
| CREATEDDATE | MM/DD/YYYY | The date the Document was created.<br><br>*Parties acknowledge that the CREATEDATE field may not actually reflect the date the Document was created, due to the ease of change to that field and the technical definition of the field (*e.g.*, the created date and time reflects the date when the Document was created in that |

| Field Name | Example/Format | Description |
|---|---|---|
| | | particular location on the computer or on the other storage device location). |
| CREATETIME | HH:MM | The time the Document was created.<br><br>*Parties acknowledge that the CREATETIME field may not actually reflect the time the Document was created, due to the ease of change to that field and the technical definition of the field (*e.g.*, the created date and time reflects the time when the Document was created in that particular location on the computer or on the other storage device location). |
| LASTMODDATE | MM/DD/YYYY | The date the Document was last modified. |
| LASTMODTIME | HH:MM | The time the Document was last modified. |
| RECEIVEDDATE | MM/DD/YYYY | The date the Document was received. |
| RECEIVEDTIME | HH:MM | The time the Document was received. |
| TIMEZONE PROCESSED | UTC, PST, CST, EST, CET, etc. | The time zone the Document was processed in. |
| FILEPATH | *i.e.*, John Smith/E-mail/Inbox | Location of the original Document . The source should be the start of the relative path. |

| Field Name | Example/Format | Description |
|---|---|---|
| AUTHOR | Jsmith | The author of a Document from extracted Metadata.<br>*Parties acknowledge that the Author field may not actually reflect the author of the document. |
| LASTEDITEDBY | Jsmith | The name of the last individual to edit the document from extracted Metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name or e-mail of the sender of an e-mail. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the recipient(s) of an e-mail. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the copyee(s) of an e-mail. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the blind copyee(s) of an e-mail. |
| SUBJECT | | The subject line of the e-mail. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |

| Field Name | Example/Format | Description |
|---|---|---|
| SENTTIME | HH:MM | The time the email was sent. |
| CUSTODIAN | John Smith; Tim Jones; Finance Department | The custodian/source of a Document. NOTE: If the documents are de-duped on a global level, this field should contain the name of each custodian from which the document originated. |
| ATTACH COUNT | Numeric | The number of attachments to a Document. |
| ATTACH BATES | ABC00000001 (Unique ID) | The bates number associated with the first page of all attachments to a Document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| MD5HASH (or equivalent) | | The MD5 Hash value or "de-duplication key" assigned to a Document. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The relative path to a native copy of a Document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text or OCR of the Document. There should be a folder on the deliverable containing a separate text file per document. These text files should be named with their corresponding bates numbers.<br><br>If the attachment or e-file does not extract any text, then OCR for the document should be provided (only to the extent the Producing Party OCR's the document for its own benefit). |

| Field Name | Example/Format | Description |
|---|---|---|
| CONFIDENTIALITY | "CONFIDENTIAL" or<br>"HIGHLY CONFIDENTIAL" | The confidentiality designation for each Document pursuant to the Protective Order. |
| PRIVILEGE | "Privileged" or<br>"Partially Privileged" or<br>"Not Privileged" | The privilege status for each Document. |

** As it relates to the CUSTODIAN Metadata field above, the Producing Party reserves the right to produce in multiple fields (*e.g.*, CUSTODIAN + DUPLICATE CUSTODIAN) since the Metadata may already be exported and logged as such.

** Same is true with all DATE and TIME Fields. These fields may be provided in separate fields or combined into a single field as long as the required information is produced in the load file.